Esther WASHINGTON, Respondent,

v.

Frank EICKHOLT, d/b/a Safeway Cab Co., Appellant.

No. 23559.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1962.

Watson, Ess, Marshall & Enggas, Samuel J. Molby, Vincent E. Rawson, Kansas City, for appellant.

Rubins, Kase & Rubins, Arthur J. Kase, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an appeal by defendant-appellant, Frank Eickholt, from a judgment in the sum of $5,500 for plaintiff-respondent, Esther Washington, for injuries suffered in an automobile collision on July 2, 1959, in Kansas City, Missouri.

Plaintiff, a forty-five year old woman, drove her automobile to the intersection of 111th Street and 71-Highway and stopped there for some time waiting for the red traffic light to change to green. Defendant's employee driving his employer's taxicab at a speed of between 25 and 35 miles per hour ran the taxicab into the rear end of plaintiff's stationary vehicle knocking it across the intersection, causing the front seat to ram forward and slide back, injuring plaintiff. At the trial defendant's counsel admitted liability and presented only the issue of damages.

On this appeal defendant raises two contentions: First, that Instruction No. 2, the damage instruction, omitted facts indispensable to the issues; and second, that the verdict and judgment are so grossly excessive as to indicate the amount was the result of passion and prejudice and was not supported by the evidence.

Instruction No. 2 reads as follows:

"The court instructs the jury that if you find in favor of plaintiff in estimating and determining the damages to be awarded the plaintiff you will take into consideration the nature and extent of all injuries, if any, which you believe from the evidence she has received as a direct result of the accident in question, all physical pain and disability, if any, which you believe from the evidence she has suffered, and all physical pain and disability, if any, which you believe from the evidence she will, with reasonable certainty, hereafter suffer as a direct result of such injuries, if any, and if your verdict be for her it will be in such an amount for damages as a whole, stated in one lump sum, as you believe from all the evidence will fairly and reasonably compensate her for her injuries, if any, so received."

During the trial one of the plaintiff's doctors, Dr. Multauf, testified that he had examined plaintiff for the first time on April 27, 1961, and that "she exhibited some signs of mild—what we call hypertrophic arthritic changes. That is a kind of wear and tear type, of, oh, changes in the bone. They were minimal, however, which are consistent with her age." He further stated that while he didn't know, the accident "could aggravate a mild arthritis" but that as to plaintiff's arthritic condition "it is very, very minimal." With leave of court plaintiff amended her petition to include damages for aggravation of pre-existing hypertrophic osteo-arthritis. However, in submitting the damage issue in Instruction No. 2 she limited the submission to only those injuries "she has received as a direct result of the accident in question". Additionally, *defendant* requested and the court gave Instruction No. 4 which reads:

"The Court instructs the jury that if you find and believe from the evidence that any

part of the injuries or condition from which plaintiff claims to suffer and has suffered by reason of said automobile accident are due to previous disease or condition existing at the time of said accident, if you so find, then you will award to plaintiff no damages for such injuries or condition which you find are entirely attributable to conditions or disease existing prior to said accident. In the event that you find that any disease or condition of plaintiff, existing prior to said accident, if you so find, was aggravated by said accident, then you may award plaintiff damages for such aggravation."

■ We find no merit in defendant's contention that Instruction No. 2 is erroneous because it omitted all reference to a pre-existing arthritic condition. If anyone was prejudiced by Instruction No. 2 it was plaintiff who limited the jury to awarding damages for injuries directly growing out of the accident and not for aggravation of pre-existing conditions. Defendant cannot successfully complain because the instruction was unfavorable to plaintiff.

Defendant's other contention of error requires a summary of the evidence concerning the extent of plaintiff's injuries resulting from the accident. Defendant had plaintiff examined by a doctor of his choice but did not call that doctor as a witness or otherwise present any medical testimony. According to plaintiff's evidence the hard impact of the collision threw her into contact with her car striking her chest and stomach principally. After her car was temporarily fixed enough for her to drive it she proceeded home arriving about midnight. She called her family physician, Dr. Haugh, who on seeing her the next morning ordered her to Wheatley Provident Hospital. There, her complaints were that she was very sore, her entire neck was stiff, and her stomach and back were particularly painful. While in the hospital she received constant treatment of bed rest, various medicines including codeine, "shots", ice packs, heat treatments and electrical treatments for her back.

Dr. Haugh testified that he examined her in the hospital finding concussion; sprained neck; involvement of the cervical region; "the right hip and muscles of the right side were giving her trouble"; and lower back strain. She had pain fairly continuously while in the hospital, especially in the lower part of the sacroiliac region. She also had muscle spasm in that and other regions of her body. He prescribed a back support for her to wear except when in bed at night.

Upon her release from the hospital on July 8, 1959, she continued to receive medical treatment from Dr. Haugh averaging once or twice each week for a total of approximately 29 treatments as of August 26, 1960. She has supplemented this at home with hot packs, rubbing alcohol and hot baths. During all this time plaintiff continued to have pain especially in the sacroiliac region. After about three months she experienced recovery of her neck, head and stomach but not of her back. According to her physicians the injury to her back described as a "muscular ligamentous strain of the back involving the supportive structures and muscles and ligaments of the low back" is a permanent one and no further improvement of it is to be expected even by further treatment.

As a result of her accident plaintiff has continued to have pain and limitation of movement of her back. She has to wear her back support every day, taking it off only at bedtime. She can no longer perform all her housework. "It hurts bad" when she attempts to sweep, mop or do dishes and her husband has had to take over much of the housework. Her back "bothers" (pains) her "all the time * * * more when I get up and stir around."

At the time of the accident plaintiff was on the second day of a two week vacation from the laundry where she was employed as a "folder". On July 20th, she returned to her job. She does her work, principally folding clothes, but it causes her back to hurt and really bothers her. She has reported this to her employer, and has com-

plained "a lot" and "very frequently" to some of her fellow workers that her back hurt her when she endeavored to work or to move about.

According to her husband she still complains about her back every day and every night. She doesn't sleep well and early in the morning she awakens him saying " 'My back is hurting; get up; my back is hurting'. That is not my back, still I have to get up, sweeping and mopping, she can't do none of that. I have to do all of it." Her condition is getting no better.

At the commencement of the trial when asked what she did when the impact of the two cars occurred plaintiff momentarily shed tears as she endeavored to tell of her effort to see if her mother who was riding with her was hurt (apparently she wasn't). The trial court immediately declared a recess. Defendant's counsel moved for a mistrial. The trial judge overruled the motion explaining that in his judgment plaintiff had acted inadvertently as a natural expression of excitement and fear and not for the purpose of influencing the jury. Defendant, while acknowledging the trial judge's right to exercise his discretion in the matter by refusing to declare a mistrial now points to this incident as somewhat explanatory of what defendant terms an excessive verdict.

■■■ In reviewing the jury's findings on a contention of excessiveness of the verdict it is the duty of the appellate court to consider the evidence of damages in the light most favorable to the plaintiff. In so doing we acknowledge that the amount of damages is primarily for the jury. It is that body which is charged with the function of finding, as a fact, what sum will fairly and reasonably compensate plaintiff for her injuries.

■■■ An appellate court properly may determine, as a matter of law, the maximum amount the evidence will support. It is well known that such question is not susceptible of determination by precise formula or with mathematical nicety. Consideration must be given, among others, to the nature and extent of the injury and disability, and whether or not it is permanent.

Both plaintiff and defendant have cited numerous cases suggesting they are sufficiently comparable to be of some aid. We have examined all of these cases carefully. Under the uniformity rule we obtain what aid we can from an examination of cases involving similar or fairly comparable injuries giving due consideration to any differences and to the changes in economic conditions, living costs and the purchasing power of the dollar since the time the particular verdict was rendered. In making any comparison we must remember that each case is to be carefully considered on its own facts, and that both individuals and injuries are not susceptible of being treated as though exactly like some other, if individual justice is to be done in each separate case.

The record presents the picture of a previously healthy, hard working woman free of any of her present injuries and with a life expectancy of 26 years. Without again summarizing her injuries we are reminded that in addition to all her pain and suffering of the past she has a substantial permanent and painful injury that will be with her from now on. Not only must she continue to bear the daily pain as she endeavors to work and move about but also the resulting disability including an inability to do many of the usual and fundamental things involved in housework which women customarily undertake.

■ The jury has made its findings. The trial court after due consideration has overruled defendant's motion for a new trial. Upon our own review we are of the opinion that the verdict is within the evidence and not excessive as a matter of law. We are convinced it is not the result of passion or prejudice. It is our conclusion that the judgment should stand affirmed in its full amount. Accordingly, the judgment is affirmed.

All concur.