OSVALDO VENTURINI *et al.*, Plaintiffs-Appellants, *v.* ANTONIO AFFATATO *et al.*, Defendants.—(VICTOR J. CACCIATORE, Defendant-Appellee.)

First District (2nd Division)

Opinion filed May 6, 1980.—Rehearing denied June 3, 1980.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellants.

No brief filed for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Osvaldo and Carmelina Venturini, brought this action seeking legal and equitable relief from multiple defendants based on their alleged participation in a conspiracy to interfere with and defraud plaintiffs of their rights under a contract to purchase certain real estate. Pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)), plaintiffs appeal from an order dismissing their amended complaint as to one defendant, Victor J. Cacciatore, who has failed to file a brief as appellee.

The allegations of the complaint and the procedural details of this case, insofar as they are necessary to a resolution of this appeal, are as follows. Plaintiffs entered into a contract to purchase real estate owned by defendants Antonio and Florence Affatato. At the time of the contract, June 1976, the subject property had been leased to Texaco, Inc., under a lease which granted Texaco an option to purchase the property for $60,000. The option had to be exercised before November 30, 1976, when the lease would expire. In April of that year, the Affatatos' attorney, defendant Rafael Del Campo, inquired of Texaco whether it planned to exercise its option. In a letter to Del Campo dated May 11, 1976, and attached to plaintiffs' complaint as an exhibit, Texaco wrote: "As for the probable sale of the property, you may be assured that we will waive our rights to purchase upon your notification of a bona fide offer." In order to induce plaintiffs to enter into a contract to buy the property, Del Campo represented to plaintiffs' counsel that the property was subject to the Texaco lease, which would terminate upon closing or no later than November 30, 1976, and that Texaco would not exercise its option but instead would permit the sale of the property free and clear of the option. In reliance, plaintiffs contracted to buy the property for $125,000.

The contract, which was attached to plaintiffs' complaint, does not expressly provide that it is conditioned upon Texaco's waiver of its rights under the lease. It merely provides that the Affatatos will deliver a recordable warranty deed subject to existing leases (paragraph 2); that the sellers would deliver possession at closing, subject to the existing lease (paragraph 6); and that the sellers would provide, prior to closing, evidence of merchantable title (paragraph 1 of the contract's conditions

and stipulations). Finally, paragraph 11 of the contract's conditions, a typed section, provides: "SELLERS state that [the] present lessee is in compliance with and not in violation of all the terms and covenants of the lease; that the monthly rentals are $425.00 per Mo.; that the lessee's rights, title and interest expire 11/30/76. In the event that any of these statements relative to the present lease are not true, the PURCHASERS may rescind this contract, and the earnest money shall be refunded."

With full knowledge of plaintiffs' contract rights and Texaco's waiver representations, defendant-appellee Cacciatore, acting as attorney for defendants Jerry and Celeste Eubanks, began contacting Texaco agents in an attempt to obtain an assignment of the Texaco lease and option. Cacciatore also endeavored to persuade Del Campo to sell the Affatato property to Cacciatore's clients, who offered to pay $250,000.

The closing of the sale was originally set for October 28, 1976. On October 27, Del Campo informed plaintiffs' counsel that the closing should be postponed because Texaco was reassessing its rights to assign the lease or exercise its option, and the Affatatos were at that time unable to produce a formal written release by Texaco. The closing was postponed by agreement, until the matter was clarified. Plaintiffs further alleged that Del Campo, Cacciatore, and their clients then entered into a conspiracy to interfere with and defraud plaintiffs of their contractual rights in the property, by agreeing that the property would be sold to Cacciatore's clients. Pursuant to this agreement, in early November 1976, Del Campo knowingly misrepresented to plaintiffs' counsel that Texaco had assigned its lease and option to an unknown assignee, whose purpose was to exercise the option. Actually, as Del Campo knew, no such assignment had occurred or ever did. Del Campo then demanded that plaintiffs close the transaction on November 15, regardless of Texaco's assignment and the Affatatos' inability to obtain a release from Texaco. All this was done to induce plaintiffs to refuse to proceed with the closing, thereby providing Del Campo and the Affatatos with an ostensible excuse for selling the property to Cacciatore and/or his clients. Plaintiffs also alleged that from at least late October 1976, Del Campo and Cacciatore were acting with each other's knowledge and approval.

Plaintiffs sought clarification from Texaco of its position, in a letter dated November 11, 1976, attached to the complaint. In the meantime, Del Campo declared the contract null and void when plaintiffs refused to accede to his fraudulent demands that they close the transaction on November 15 notwithstanding the question of Texaco's assignment. The property was then conveyed, in contravention of plaintiffs' rights, into a land trust held by defendant Central National Bank for the sole benefit of defendant-appellee Cacciatore.

Plaintiffs alleged they were and are willing and able to perform the

contract in accordance with its terms, and that their remedy at law was inadequate. In count I of their amended complaint plaintiffs sought injunctive relief from all defendants, including an order compelling the appropriate defendants to convey title to the property to plaintiffs. In count II, plaintiffs sought damages for breach of contract from the Affatatos. In counts III, IV, and V, plaintiffs requested damages from all defendants except the bank for, respectively, conspiracy to defraud and to interfere with plaintiffs' contract rights; interference with prospective advantage; and fraudulent misrepresentation. A jury demand was filed on all but count I.

All defendants but the trustee bank filed a group motion to dismiss the complaint, essentially on the ground that plaintiffs contracted to purchase the property subject to the Texaco lease and their decision not to go through with the closing amounted to an election to rescind the contract. The motion also contended plaintiffs could have investigated the truth of any representation as to the lease assignment. Although the motion prayed that the complaint be dismissed for failing to state a cause of action, the motion was supported by an affidavit of Del Campo "as to affirmative matters not appearing on the face of the complaint." The affidavit stated that plaintiffs' counsel drafted the real estate sales contract. It also set out factual matters with regard to Del Campo's appearance, and plaintiffs' failure to appear, on the date Del Campo set for closing. Included also were letters between Del Campo and plaintiffs' counsel on this subject. Del Campo in this affidavit did not deny making a misrepresentation as to the lease assignment.

Plaintiffs filed a lengthy response, containing argument, to defendants' group motion to dismiss. Noting the motion was supported by an affidavit as to matters not appearing on the face of the complaint, plaintiffs argued the motion must have been made pursuant to section 48(1)(i) of the Civil Practice Act, rather than section 45. (Ill. Rev. Stat. 1977, ch. 110, pars. 48(1)(i), 45.) Therefore, pursuant to section 48(3), plaintiffs supplemented their response by an affidavit and "other proof" consisting of depositions, letters, and other materials obtained in discovery. (See Ill. Rev. Stat. 1977, ch. 110, par. 48(3).) These materials tended generally to support plaintiffs' factual allegations. Thus, depositions of Texaco employees were submitted which tended to confirm and expand upon Cacciatore's repeated attempts to procure an assignment of Texaco's lease, over a period beginning in August and extending through the second week of November 1976. The materials also established continuing contact between Del Campo and Cacciatore or his associate throughout the month of November, culminating in the closing and conveyance into trust for the benefit of Cacciatore on November 23, 1976. In addition, plaintiffs submitted a letter by Texaco to

all counsel dated November 19, 1976, once again expressing a waiver of its option right, as well as a letter from plaintiffs' counsel to Del Campo the following day, expressing plaintiffs' readiness to close the transaction in light of Texaco's position. Evidence of plaintiffs' attorney's repeated attempts to telephone Del Campo between November 19 and 22 was also offered.

Del Campo filed a separate reply, containing argument, to plaintiffs' response. Subsequently, Cacciatore filed a separate motion to dismiss. The first basis for the motion was that the complaint was defective under section 45 of the Civil Practice Act in that it failed to state a cause of action for tortious interference with a contractual relationship as to Cacciatore. Next, the motion relied on section 48(1)(i) of the Civil Practice Act, contending that plaintiffs' request for equitable relief was barred by the fact that plaintiffs breached or rescinded the contract.[1] Finally, the motion stated that if plaintiffs did have a cause of action, their remedy at law was adequate. Cacciatore submitted a memorandum in support of his separate motion which, besides containing argument on these points, set forth as "factual background" the following: the fact that plaintiffs' counsel drafted the contract in issue; the contract terms relating to the lease, and the fact that the contract was not expressly conditioned on Texaco's waiver of the lease; and conclusions drawn from the letters and affidavit attached to the prior group motion to dismiss of all defendants, to the effect that plaintiffs breached or rescinded the contract. Del Campo then filed his own memorandum adopting Cacciatore's "factual background" and similarly arguing that plaintiffs breached or rescinded the contract and therefore were not entitled to equitable relief such as specific performance.

. On November 3, 1976, the following order, drafted by Cacciatore's attorney, was entered by the trial court:

"This cause coming on to be heard on Motion of Defendant Cacciatore to Dismiss [the] Amended Complaint and on Motion of Defendant Del Campo to dismiss [the] Amended Complaint, and the Court having been duly advised of the premises:

IT IS HEREBY ORDERED that:

1. The Motion of Defendant Cacciatore to Dismiss [the] Amended Complaint is granted as to all counts of the amended complaint pursuant to the reasons set forth in the Court's Memorandum Opinion; and

---

[1] This court has several times disapproved the practice of filing such joint motions to dismiss. See *Chemical Petroleum Exchange, Inc. v. Metropolitan Sanitary District* (1980), 81 Ill. App. 3d 1005, 401 N.E.2d 1203; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 497-98, 396 N.E.2d 34; see also *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 405, 312 N.E.2d 605; *Dixon v. Ford Motor Credit Corp.* (1979), 72 Ill. App. 3d 983, 987-89, 391 N.E.2d 493.

2. The Motion of Defendant Del Campo to Dismiss [the] Amended Complaint is denied as to all counts of the amended complaint pursuant to the reasons set forth in the Court's Memorandum Opinion."

On November 6, the order was modified by the addition of a finding of appealability pursuant to Supreme Court Rule 304(a). Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).

Plaintiffs filed a notice of appeal from the dismissal as to Cacciatore. In their praecipe for record, plaintiffs requested inclusion of the "Court's Memorandum Opinion, filed on about November 3, 1978," as well as "[a]ll other documents and papers herein filed or as may be filed * * * which pertain to the instant appeal." The clerk certified the record to be complete as per the praecipe for record, with the exception of the memorandum opinion referred to in the court's November 3 order. No ruling on the other defendants' motion to dismiss, if any, nor any "other documents and papers" besides those specifically requested in the praecipe, were ever included in the record.

█ ██ The first issue is whether plaintiffs' failure to present the trial court's memorandum opinion and/or a report of the proceedings on the motion (or some satisfactory substitute therefor) bars our review. We recognize the general rule that the burden is on the appellant to present a satisfactory record, and any doubt arising from the incompleteness of the record in its presentation of facts will be resolved against the appellant. (See, *e.g., Brokerage Resources, Inc. v. Jordan* (1980), 80 Ill. App. 3d 605, 609, 400 N.E.2d 77; *In re Estate of Tingos* (1979), 72 Ill. App. 3d 703, 712, 390 N.E.2d 1349.) But failure to present a report of proceedings does not require dismissal or affirmance where the issues can be resolved on the record as it stands. (*Rosenblatt v. Michigan Avenue National Bank* (1979), 70 Ill. App. 3d 1039, 1042, 389 N.E.2d 182; see *Lorts v. Illinois Terminal R.R.* (1980), 80 Ill. App. 3d 974, 977, 400 N.E.2d 715; *Van Walsen v. Blumenstock* (1978), 66 Ill. App. 3d 245, 247, 383 N.E.2d 776.) The case before us was decided by the trial court on the basis of a motion to dismiss and the evidentiary materials presented by both sides, without hearing any evidence. Although there may be underlying disputes of fact, the question presented to us is whether dismissal was proper based on the motion and materials filed, a question of law that does not require resort to specific arguments advanced at the motion to dismiss or specific reasons relied upon by the trial court. (*Gideon Service Division v. Dunham-Bush, Inc.* (1980), 80 Ill. App. 3d 633, 636, 400 N.E.2d 89; *Flannery v. Marathon Oil Co.* (1979), 75 Ill. App. 3d 690, 691-92, 394 N.E.2d 706; see also *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 347, 395 N.E.2d 1131.) This rule is particularly in accord with the principles underlying motions to dismiss, which require that the

motion "point out specifically the defects complained of" if made under section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45; see, *e.g., Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 556, 309 N.E.2d 550), or, if made under section 48, that the defendant support his motion by affidavit as to grounds not appearing on the face of the pleading attacked. (Ill. Rev. Stat. 1977, ch. 110, par. 48; see, *e.g., Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645.) Thus we will review plaintiffs' appeal on the merits.

If any summary disposition of this cause were proper, it would be summary reversal due to the defendant-appellee's failure to file a brief. After Cacciatore's counsel had received three extensions of time to file a brief, the third labeled as a final extension, a fourth motion for an extension was filed on October 24, 1979. Simultaneously, another attorney requested leave to file an additional appearance on behalf of Cacciatore. On October 30, 1979, such leave and an extension to November 30, 1979, were granted by this court, with the caveat that failure to comply would result in the case being taken without an appellee's brief. No brief was filed and the cause was so taken. On March 26, 1980, six days before oral argument in this case was scheduled, Cacciatore's attorneys filed a motion for leave to file a brief instanter, supported by an affidavit stating that they never received an order with respect to their motions and therefore never finished Cacciatore's brief. If anything, the lack of diligence this affidavit exhibits militates against granting the motion, and this case was therefore taken without an appellee's brief.

■■ Nevertheless, this will not affect our disposition. While we will not act as the appellee's advocate or search the record to sustain the trial court's order, the propriety of the dismissal must rest, as we have seen, on matters specifically set forth in the motion to dismiss. Therefore, although this court could summarily reverse on as complex a factual record as this, because the questions of law presented are easily decided, we will decide the merits. See generally *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

■ Because no ruling was apparently ever made on the defendants' group motion to dismiss, except for the court's refusal to dismiss the suit as to Del Campo, we will examine the sufficiency of Cacciatore's separate motion to dismiss. The first ground for the motion was that the complaint was defective under section 45 for failing to state a cause of action for tortious interference with contract as to Cacciatore. The elements of that tort are: the existence of a valid contract; knowledge by the defendant of the existence of that contract; intentional inducement by the defendant to the other party to breach his contract; and damages as a result. (*Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 729-30, 306 N.E.2d 554.) In addition, lack of justification for the interference must be pleaded and proved in

order to render the interference tortious. See *Swager v. Couri* (1979), 77 Ill. 2d 173, 186-87, 395 N.E.2d 921.

■■ Construing plaintiffs' complaint liberally (Ill. Rev. Stat. 1977, ch. 110, par. 33(3)), the issue is whether on the facts alleged and all reasonable inferences that could be drawn therefrom, there was demonstrated any possibility of recovery under the theory alleged, in which case the complaint should not have been dismissed. (*E.g., Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 25, 392 N.E.2d 154.) Under these principles, we believe plaintiffs' complaint, though no model of pleading, sufficiently stated a cause of action as to Cacciatore. Although Cacciatore's motion failed to specify how plaintiffs were deficient in their statement of a cause of action, his trial memorandum focused on the two elements of breach and lack of justification. As to the breach, the complaint sufficiently alleges breach of contract by the Affatatos. Cacciatore's argument that plaintiffs rescinded or breached the contract themselves relied on matter beyond the face of the complaint and could not have been a proper basis for dismissal under section 45, whether or not it might under section 48, discussed below. (See generally, *e.g., Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 373 N.E.2d 645.) As to lack of justification, Cacciatore's position in the trial court was that even if his conduct constituted interference with contract, it was perfectly legal and therefore justified, citing *Supreme Savings & Loan Association v. Lewis* (1970), 130 Ill. App. 2d 16, 264 N.E.2d 857. We disagree, and find *Lewis* distinguishable. If Cacciatore's conduct extended only to lawful attempts to procure an assignment of the Texaco lease or take advantage of a "loophole" in the plaintiffs' contract, his position might have some merit. Even then his actions could possibly be construed as the type of "subtle third party conduct" held to support a verdict in *Hannigan v. Sears, Roebuck & Co.* (7th Cir. 1969), 410 F.2d 285, 291, *cert. denied* (1969), 396 U.S. 902, 24 L. Ed. 2d 178, 90 S. Ct. 215. But here, the complaint sufficiently alleges the existence of a conspiracy to defraud plaintiffs and to wrongfully interfere with their contractual rights, conduct actionable in this State since *Doremus v. Hennessy* (1898), 176 Ill. 608, 52 N.E. 924. (See *Swager v. Couri* (1979), 77 Ill. 2d 173, 187, 190, 395 N.E.2d 921.) Facts establishing Cacciatore's participation in this conspiracy from beginning to end are alleged or can be inferred from the complaint. Therefore, the complaint should not have been dismissed as to Cacciatore under section 45.

Cacciatore also moved to dismiss pursuant to section 48(1)(i) of the Civil Practice Act, and relied on matter outside the complaint in an attempt to show plaintiffs breached or rescinded the contract. This matter consisted of the affidavit by Del Campo and the letters between Del Campo and plaintiffs' counsel attached to the defendants' group motion to dismiss. Noting that the trial court denied Del Campo's motion to

dismiss relying on these same materials, we doubt the court granted Cacciatore's motion on this basis. Moreover, these materials, viewed in opposition to those submitted by plaintiffs in response, at best created an issue of fact as to whether plaintiffs breached or rescinded the contract or whether they were justified in holding the closing in abeyance until the Texaco matter was clarified. Since this question was crucial to several issues on which plaintiffs had demanded a jury trial, under section 48(3) the court could not properly determine the question on its own. (Ill. Rev. Stat. 1977, ch. 110, par. 48(3).) Indeed, Cacciatore's motion itself only sought dismissal of the count seeking equitable relief on this ground. Even on that count, we do not believe the question, on these facts, was the type of easily proved issue of fact which could properly be decided on a section 48(1)(i) motion to dismiss. (Compare *Kinney v. Continental Assurance Co.* (1976), 42 Ill. App. 3d 263, 264-65, 356 N.E.2d 131.) The existence of this defense could not with reasonable certainty have been determined from the record then before the trial court. (*Dangeles v. Marcus; Stanley v. Chastek* (1962), 34 Ill. App. 2d 220, 180 N.E.2d 512.) Rather, it constituted only one of several possible interpretations of the facts and went only to deny the allegations of ultimate fact contained in the complaint. (See *Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 265-66, 369 N.E.2d 365.) Dismissal as to one defendant under section 48 under circumstances such as these appears particularly inappropriate in view of the fact that a trial will be held on these issues in any event. And if equitable relief is held proper as to any defendant, it would operate most efficaciously against Cacciatore for whose benefit the property is being held. In view of the inadequacy of the remedy at law, retention of Cacciatore in the action would seem proper for no other reason than the possibility that he may be compelled to perform the Affatatos' contract with the plaintiffs. *E.g., Stein v. Green* (1955), 6 Ill. 2d 234, 241, 128 N.E.2d 743.

Accordingly, the judgment of the trial court dismissing Cacciatore from the action is reversed and the cause remanded with directions to deny the motion to dismiss and for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

PERLIN and CAMPBELL, JJ., concur.