William A. McINTOSH, Plaintiff,

v.

MAGNA SYSTEMS, INC., an Illinois Corporation, Wilbur S. Edwards, James F. Griffin, and Zed R. Daniels, Sr., Defendants.

No. 81 C 7231.

United States District Court,
N. D. Illinois, E. D.

June 3, 1982.

Daniel C. Sullivan, Vytas P. Ambutas, Thomas M. O'Brien, Sullivan & Associates, Ltd., Chicago, Ill., for plaintiff.

Francis X. Grossi, Jr., Howard J. Stein, (Daniels), Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., Terrence Leonard, (Magna) Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff William A. McIntosh, a citizen of North Carolina, brought this twelve-count complaint against Illinois defendants, Magna Systems, Inc. ("Magna"), Wilbur S. Edwards ("Edwards"), James F. Griffin ("Griffin"), and Zed R. Daniels, Sr. ("Daniels"), alleging breach of contract, quantum meruit, fraudulent misrepresentation, intentional interference with prospective business opportunities and intentional interference with a contractual relationship. Diversity jurisdiction is alleged pursuant to 28 U.S.C. § 1332 (1976). Presently before the Court are the defendants' various motions to dismiss all twelve counts of this complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the following reasons, defendants' motions are granted in part and denied in part.

The plaintiff and Magna entered into an agreement on or about May 4, 1978, which is the subject matter of this litigation. The agreement purportedly provided that in return for plaintiff's assistance in the development, acquisition, marketing, production and distribution of Magna educational ma-

terials to colleges and universities, Magna would reserve an annual fee of $35,000 for three years on plaintiff's behalf. Magna also promised to provide plaintiff the option of purchasing 25 percent of Magna's authorized stock in lieu of payment of the accumulated annual fee at the end of the three-year period. Although plaintiff has allegedly performed his obligations under the terms and conditions of the agreement, Magna, through its defendant directors, Edwards, Griffin and Daniels, has refused to pay plaintiff his accumulated annual fee and has amended its articles of incorporation so as to defeat plaintiff's right to purchase 25 percent of Magna's authorized stock. The specific factual and legal arguments arising from these incidents will be discussed seriatim. However, the Court initially must determine, however, whether Illinois or North Carolina law applies in this case.

1. Choice of Law

■ In a diversity action, the choice of law rules of the state in which the district court is located apply. *Klaxon Co. v. Stenton Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981). In the present case, therefore, plaintiff's allegations require the Court to look to Illinois contract and tort choice of law principles. In contract cases, the general Illinois rule is that if the contract was to be performed in more than one state, as here,[1] the law of the place of execution governs. *P. S. & E., Inc. v. Selastomer Detroit, Inc.*, 470 F.2d 125, 127 (7th Cir. 1972). When the place of contract execution implicates more than one jurisdiction, as here,[2] Illinois courts will adhere to the "most significant contacts" test to determine which law applies. *Adams Laboratories, Inc. v. Jacobs Engineering*

*Co.*, 486 F.Supp. 383, 389 (N.D.Ill.1980); *Ehrman v. Cook Electric Co.*, 468 F.Supp. 98, 100 (N.D.Ill.1979). Similarly, in tort cases, Illinois will adhere to the "most significant relationship" test to determine which law applies. *Evra Corp. v. Swiss Bank Corp.*, 522 F.Supp. 820, 827 (N.D.Ill. 1981); *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593 (1970).

■ The "most significant contacts" test applicable to actions sounding in contract requires examination of the following five factors: (1) the place of "contracting" (i.e. the place where the last act necessary to make the contract binding occurred); (2) the place of negotiation; (3) the place of performance; (4) the situs of the subject matter of the contract; and (5) the domicile, residence, place of incorporation, and place of business of the parties. Restatement (Second) of Conflicts § 188 (1969). Although Illinois and North Carolina both have substantial contact with plaintiff's contract claims, on balance the Court finds that Illinois law should govern resolution of those claims.

■ Plaintiff is a North Carolina citizen and resident. Magna is a citizen of Illinois and has its principle place of business in Illinois. The individual defendants are all Illinois citizens and residents. We are unable to determine from this record the place of contracting or the place of negotiation. It is clear, however, that plaintiff's place of performance involved several states in addition to North Carolina. Defendants' reciprocal performance under the contract was expected to occur in Illinois. Moreover, the subject matter of this contract, either the educational materials plaintiff was expected to promote or the compensation plaintiff expected to collect, was located in Illinois. Given that the non-performance alleged in

---

1. Although the record before the Court is incomplete, it appears that plaintiff's performance of his obligations under the contract took place on a "large-scale" or nationwide basis. Complaint, ¶ 2.

2. The record is also incomplete as to the place of execution. To the extent the contract was

memorialized by James Griffin's May 4, 1978, letter to plaintiff and plaintiff's June 1, 1978, letter to James Griffin, "execution" occurred in both Illinois and North Carolina. To the extent the contract was oral, the record is entirely devoid of any indication where the parties' agreement was reached.

plaintiff's complaint occurred exclusively in Illinois, the Court finds that Illinois has the most significant contact with the subject matter of this litigation as well as the most significant interest in resolving this dispute.

██ The "most significant relationship" test applicable to actions sounding in tort requires examination of the following four factors: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, place of incorporation and place of business of the parties; and (4) the center of gravity of the parties' relationship. Restatement (Second) of Conflicts § 145 (1969). In the present case, although the place of plaintiff's injury would appear to be North Carolina, the conduct which caused the injury occurred in Illinois and the center of gravity of the parties' relationship was also in Illinois. Therefore, Illinois law should govern resolution of the tort claims raised in this case.

██ Within the framework of Illinois substantive law, the Court will not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). As the Seventh Circuit has noted:

> Under the Federal Rules of Civil Procedure, it is well established that, on a motion to dismiss, a complaint must be construed in the light most favorable to the plaintiff, the allegations thereof being taken as true; and if it appears reasonably conceivable that at trial the plaintiff can establish a set of facts entitling him to some relief, the complaint should not be dismissed.

*Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977). Applying this standard to the present case, defendants' motions to dismiss will be granted as to Counts IV, V, VII, X and XI, and denied as to Counts I, II, III, VI, VIII, IX and XII.

### 2. Breach of Contract

Count I of the complaint seeks damages resulting from Magna's alleged breach of contract in failing to reserve plaintiff's $35,000 annual fee and its attempt to defeat his option to purchase Magna stock despite his full and complete performance of his obligations under the agreement. Count V of the complaint seeks punitive damages from Magna on the theory that this breach was wilful, unlawful, knowing and malicious. Magna moves to dismiss these counts on the theory that the complaint does not adequately allege whether the agreement in question was oral or written. If the contract was written, Magna contends that the documents attached to the complaint purportedly evidencing the contract lack sufficient specificity and mutuality of obligation. If the contract was oral, Magna contends that the terms as alleged violate the Statute of Frauds. Ill.Rev.Stat. 1979, ch. 59, § 1.

Plaintiff's complaint as well as his responsive brief make clear that the parties never entered into a formal written contract of employment. The letters exchanged between the parties in May and June, 1978, do not themselves rise to the level of an offer and acceptance.[3] The fun-

---

3. Griffin's May 4, 1978, letter to plaintiff outlines the alternative means under which Magna would compensate plaintiff for his services. That letter (and plaintiff's letter to Griffin in June) does not, however, identify the services plaintiff was obligated to perform in order to qualify for such compensation. Griffin's reference to "a consultant's fee" is not sufficiently specific to constitute a contractual term under Illinois law.

Griffin's reference to "our last discussion" and "our mutual understanding" does reflect, however, that the parties had engaged in prior, oral discussions. To the extent the agreement underlying this lawsuit was oral, the general description of plaintiff's obligations in the complaint is sufficient. Plaintiff alleges that he "was to undertake performance of various projects in the interests of Defendant MAGNA involving large scale development, acquisition, marketing, production and distribution of printed, audio and visual educational materials to colleges and universities." Complaint, ¶ 2. In light of the general pleading requirements of the federal rules, these allegations are more than sufficient. Fed.R.Civ.P. 8.

damental issue, therefore, is whether the oral agreement manifested by those letters is barred by the Statute of Frauds.[4]

Under Illinois law, a contract is voidable only if it is impossible of performance within one year. *Sinclair v. Sullivan Chevrolet Co.*, 45 Ill.App.2d 10, 14, 195 N.E.2d 250 (3d Dist.), *aff'd.*, 31 Ill.2d 507, 202 N.E.2d 516 (1964). Although the agreement at issue here envisioned a three-year term, the Statute of Frauds cannot be invoked as a defense in this case because plaintiff has alleged full performance of his obligations under the agreement. It is axiomatic that complete performance on one side of an oral agreement bars application of the Illinois Statute of Frauds.[5] *Welt v. Koehring Co.*, 482 F.Supp. 437, 442 (N.D.Ill. 1979); *Mapes v. Kalva Corp.*, 68 Ill.App.3d 362, 368, 24 Ill.Dec. 944, 386 N.E.2d 148 (2d Dist. 1979). Accordingly, the Court will not dismiss Count I of plaintiff's complaint.

Magna urges this Court to dismiss Count V of the complaint on the theory that punitive damages are not recoverable in an action for breach of contract. As a general rule, Illinois courts will not award punitive damages for actions grounded solely in breach of contract. *Sabath v. Mansfield*, 60 Ill.App.3d 1008, 1015, 18 Ill.Dec. 8, 377 N.E.2d 161 (1st Dist. 1978). Only when the breach itself constitutes an independent and wilful tort accompanied by fraud, malice, wantonness or oppression, will Illinois permit recovery of punitive damages for a breach of contract. *Garman v. New York Life Insurance Co.*, 501 F.Supp. 51, 53 (N.D. Ill.1980); *McGrady v. Chrysler Motors Corp.*, 46 Ill.App.3d 136, 141, 4 Ill.Dec. 705, 360 N.E.2d 818 (4th Dist. 1977). *See also* Restatement (Second) of Contracts, § 355 (1979).

In the present case, the breach of contract underlying plaintiff's complaint does not itself rise to the level of tortious conduct independent of the other allegations separately pleaded in the complaint. Plaintiff's claims of tortious conduct underlying the breach are merely duplicative of other claims appearing in later counts in the complaint. Counts VI and IX, for example, seek punitive damages from Magna and the individual defendants for their allegedly fraudulent misrepresentations to induce plaintiff to enter into this contract. Counts VII and XI of the complaint seek punitive damages from Magna and the individual defendants for their allegedly intentional interference with plaintiff's business opportunities. Count XII of the complaint seeks punitive damages from the individual defendants for their alleged interference with Magna's contractual relationship with plaintiff. In light of these separate allegations of defendants' tortious conduct, the Court is unable to identify from Count V any independent cause of action sounding in tort arising simply from defendants' breach of contract. Accordingly, Count V will be dismissed.

3. Quantum Meruit

Count II of plaintiff's complaint seeks recovery from defendants for services rendered on a quantum meruit or implied contract theory. Defendant Magna moves to dismiss this count on the ground that plaintiff cannot recover under such a theory if, as alleged in Count I, there is an express written or oral contract between the parties. Although it is true that plaintiff can-

---

4. The Illinois Statute of Frauds provides in pertinent part:

No action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise of agreement upon which such action shall be brought, or some *memorandum or note thereof*, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.

Ill.Rev.Stat.1979, ch. 59, § 1.

5. Defendants' suggestion that plaintiff has not adequately alleged full performance of his obligations under the contract overlooks Rule 9(c), Fed.R.Civ.P., which provides that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally, that all conditions precedent have been performed or have occurred." Construing this complaint in the light most favorable to the plaintiff, the bar of the Statute of Frauds is not applicable to this case.

not recover under both Count I and Count II, the inconsistency of those counts is not grounds for dismissal. Rule 8(e)(2), Fed.R. Civ.P., expressly provides that "[a] party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal, equitable, or maritime grounds." The Court will not, therefore, dismiss Count II of plaintiff's complaint.

## 4. Fraudulent Misrepresentation

■ Counts III, VI, VIII and IX of the complaint allege that defendants fraudulently induced plaintiff to enter into and perform services under the agreement at issue.[6] The fraudulent inducements alleged in plaintiff's complaint consisted of defendants' representations to plaintiff that they were reserving an annual fee of $35,000 on plaintiff's behalf and that Magna was issuing only 750 of 1,000 authorized shares of its stock, the remainder to be available for purchase by plaintiff at the end of three years. Defendants' motions to dismiss are predicated on the theory that these representations were promissory in nature and cannot support an action for fraud. As Illinois courts have made clear, a promise to perform a future act, even though made without a present intention to perform, is not a false representation as will constitute

fraud.[7] *Roda v. Berko*, 401 Ill. 335, 340, 81 N.E.2d 912 (1948).

■ Reading the allegations of the complaint in the light most favorable to the plaintiff, however, the Court is unable to accept defendants' conclusion that their representations to plaintiff were promissory in nature. The specific representations underlying the oral agreement between the parties, although evidenced by an exchange of letters attached to the complaint, are not presently before the Court. We cannot dismiss a cause of action based on representations, the specific terms of which we have not yet examined. Indeed, the substance of plaintiff's allegations suggest that the representations upon which he relied to his detriment related to defendants' *present* as well as future conduct.[8] Even the future elements of those representations may have become fraudulent under Illinois law when defendants continued to accept plaintiff's services without informing him of their failure to reserve the $35,000 annual fee and their decision to extinguish plaintiff's right to purchase Magna stock.[9] *Cf. Rozny v. Marnul*, 43 Ill.2d 54, 67, 250 N.E.2d 656 (1969). The Court will not, therefore, dismiss Counts III or VI asserting a cause of action for fraudulent misrepresentation against Magna.

6. Count III seeks recovery of compensatory damages against Magna for its participation in the fraud. Count VI seeks recovery of punitive damages against Magna for the fraud. Similarly, Counts VIII and IX seek recovery of compensatory and punitive damages against the individual defendants.

7. An exception to this rule exists when the false representation to perform a future act is the scheme used to accomplish the fraud. *Carroll v. First National Bank of Lincolnwood*, 413 F.2d 353, 358–59 (7th Cir. 1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); *Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 88 (N.D.Ill.1982); *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 334, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977). We do not reach the question whether this exception should apply here.

8. Plaintiff alleged that Magna represented it "was reserving a fee of thirty-five thousand dollars ($35,000.00) per year for three years in

Plaintiff's name." Complaint, ¶ 15. Plaintiff also alleged that Magna "represented and promised that Defendant MAGNA was only issuing seven hundred fifty (750) shares and that the remaining twenty-five percent (25%) of the authorized stock would be reserved for Plaintiff's purchase with his accumulated consultant's fees, if Plaintiff so elected." Complaint, ¶ 16.

9. Defendant Daniels argues that this continuing or ongoing fraud theory was not alleged in plaintiff's complaint. This is an unjustifiably narrow reading of the complaint. Paragraphs 18, 19 and 20 of the complaint specifically allege that plaintiff's continued performance under their agreement was induced, at least in part, by the continued positive relationship between the parties. Paragraph 22 alleges that the defendants voted to amend Magna's articles of incorporation in a manner "contrary to Defendant's representations."

The individual defendants seek dismissal of Counts VIII and IX on the additional ground that corporate officers, directors and shareholders cannot be personally liable for the fraud of the corporation. This argument is predicated in part on the doctrine that officers and shareholders can only be liable for the tortious acts of the corporation in which they participate. *Citizens Savings & Loan Assoc. v. Fischer*, 67 Ill.App.2d 315, 322–23, 214 N.E.2d 612 (5th Dist. 1966). Counts VIII and IX of plaintiff's complaint allege, however, that defendants Edwards, Griffin and Daniels personally made the misrepresentations at issue in this case.[10] Complaint, ¶ 107. Moreover, each of the defendants allegedly voted to extinguish plaintiff's right to purchase Magna stock in furtherance of the continuing fraud. Complaint, ¶ 22. Although such votes are generally privileged exercises of business judgment, the fraudulent or malicious exercise of that judgment is not insulated from liability. *Cf. Murphy v. Walters*, 87 Ill.App.3d 415, 418–19, 43 Ill.Dec. 107, 410 N.E.2d 107 (2d Dist. 1980). Therefore, taking plaintiff's allegations as true that the individual defendants acted in a wilful, wanton and malicious manner in carrying out this fraud, the Court will not dismiss Counts VIII and IX against these defendants.

### 5. Intentional Interference with Prospective Business Opportunities

Counts IV and X allege that the defendants in this case intentionally interfered with plaintiff's "reasonable expectancy of entering into various consulting business relationships" with members of a number of community college associations. Counts VII and XI seek punitive damages for Magna and the individual defendants for the malicious character of their interference. Defendants have moved to dismiss these counts on the ground that plaintiff's complaint fails to allege any conduct on defendants' part which interfered with plaintiff's ability to transact business with third persons on his own behalf.

Under Illinois law, a cause of action for the tortious interference with a prospective business opportunity is established by demonstrating: (1) the existence of a valid business relationship or expectancy, (2) knowledge of that relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) damage resulting from the disruption. *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill.App.3d 359, 363, 300 N.E.2d 331 (3d Dist. 1973). In the present case, although plaintiff has adequately alleged the existence of a valid business expectancy, defendants' knowledge of the expectancy and damages resulting from the disruption of that expectancy, plaintiff has not alleged any conduct on defendants' part which interfered with his business opportunities with third parties.

Defendants purportedly "interfered" with plaintiff's business opportunities only to the extent that they diverted his time and attention from those opportunities by fraudulently inducing him to enter into an agreement with Magna.[11] This

---

**10.** The complaint also alleges in the alternative that the individual defendants "knew that [the misrepresentations] were made, acquiesced, ratified, and otherwise fully participated in" Magna's fraud. Complaint, ¶ 107. This part of paragraph 107, to the extent it envisions defendants' passive acquiescence in Magna's fraud, does not state a claim against the individual defendants. Illinois law does not permit the extension of personal liability over corporate officers who acquiesce passively in the corporation's fraud. *Murphy v. Walters*, 87

Ill.App.3d 415, 418–19, 43 Ill.Dec. 107, 410 N.E.2d 107 (2d Dist. 1980). Counts VIII and IX remain viable, therefore, only to the extent the individual defendants personally and affirmatively participated in the fraud alleged in Count III.

**11.** The conduct to which plaintiff points in support of Counts IV, VII, X and XI is the same series of fraudulent misrepresentations alleged in support of Count III. No other act of interference is alleged.

alone is not sufficient to state a claim for relief under Illinois law. The agreement at issue here, as described by plaintiff, was not exclusive; plaintiff was free to develop his business opportunities even while consulting for Magna. Moreover, the tort of intentional interference with a prospective business opportunity requires that plaintiff allege some conduct directed toward a third party through which defendants purposely cause that third party not to enter into or continue a prospective contractual relationship with plaintiff. *DP Service, Inc. v. AM International, Inc.*, 508 F.Supp. 162, 167–68 (N.D.Ill.1981); *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill.App.3d 400, 403–04, 2 Ill.Dec. 234, 357 N.E.2d 211 (2d Dist. 1976). This complaint contains no such allegation. The only tortious conduct alleged here was directed toward plaintiff, not a third party. Accordingly, Counts IV, VII, X and XI will be dismissed for failure to state a claim upon which relief can be granted.

6. Intentional Interference With a Contractual Relationship

Count XII of the complaint alleges that the individual defendants "maliciously and without justification" induced Magna to breach its contractual obligations to plaintiff by "propos[ing] and approv[ing] amendments to Magna's articles of incorporation" which extinguished plaintiff's option to purchase Magna stock. In their motions to dismiss, the individual defendants argue first that plaintiff's allegations of malicious conduct on defendants' part are merely legal conclusions not sufficient to state a cause of action under Illinois law. *Cf. Idlehour Development Co. and SSPF, Inc. v. City of St. Charles*, 88 Ill.App.3d 47, 50–51, 42 Ill.Dec. 929, 409 N.E.2d 544 (2d Dist. 1980). Defendants also contend that corporate officers and shareholders cannot be held personally liable for the exercise of their business judgment. *Swager v. Couri*, 77 Ill.2d 173, 191, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979).

The tort of intentional interference with a contractual relationship in Illinois requires that plaintiff establish: (1) the existence of a valid contract, (2) knowledge by the defendants of the existence of that contract, (3) inducement by the defendants to the other party to breach its contract with plaintiff without justification, and (4) damages resulting from the breach. *Venturini v. Affatato*, 84 Ill.App.3d 547, 553–54, 40 Ill.Dec. 1, 405 N.E.2d 1093 (1st Dist. 1980). For purposes of this motion, it is undisputed that a valid contract does exist, that defendants were aware of the contract and that plaintiff suffered damages as a result of the breach. Moreover, plaintiff's general allegation that defendants acted without justification, although probably not sufficient for purposes of Illinois fact pleading, is clearly sufficient under the notice pleading principles of the federal rules. Fed.R. Civ.P. 9(b). The primary issue on this motion, therefore, is whether the officers, directors and shareholders of Magna can be held personally liable for their allegedly malicious interference in Magna's contract with plaintiff.

Defendants argue that their vote to extinguish plaintiff's option to purchase Magna stock was a privileged exercise of their business judgment. As already noted in a slightly different context, however, that privilege is not absolute. Illinois law clearly recognizes a cause of action against officers and shareholders for the malicious exercise of corporate decision-making authority to breach a legal obligation. *H. F. Philipsborn & Co. v. Suson*, 59 Ill.2d 465, 474, 322 N.E.2d 45 (1975). Accepting plaintiff's contention for purposes of this motion that defendants' decision was without justification, Count XII does state a claim under Illinois law.

Defendants cite the Illinois Supreme Court's opinion in *Swager v. Couri, supra*, in support of the proposition that corporate officers and shareholders cannot, as a matter of law, be held personally liable for business decisions which cause the corpora-

tion to breach its contractual obligations. *Swager* does not, however, announce such a broad rule of officer, director and shareholder privilege. Plaintiffs in *Swager* sought recovery on a tort theory from corporate officers, directors and shareholders for their decision to dissolve the corporation and thereby abrogate its contractual obligations with plaintiff. At the trial court level, plaintiff obtained a favorable judgment despite the total absence of evidence establishing defendants' notice. Upon review of that judgment, the Illinois Supreme Court held that the corporate officers, directors and shareholders involved were liable to plaintiff only to the extent provided by the Business Corporation Act, not the common law of torts. 77 Ill.2d at 191–92, 32 Ill.Dec. 540, 395 N.E.2d 921. The Court did not rule that injured parties could never sue corporate directors, officers or shareholders for their intentional interference with the corporation's contractual relationships.[12] Assuming that plaintiff can establish defendants' malice, *Swager* does not dictate dismissal of Count XII.

For the foregoing reasons, defendants' motions to dismiss are granted as to Counts IV, V, VII, X and XI and denied as to Counts I, II, III, VI, VIII, IX and XII. It is so ordered.

---

**12.** At several points in the opinion, the *Swager* Court reaffirms the basic principle that a corporate officer or shareholder's malicious interference with his corporation's breach of contract is tortious under Illinois law. 77 Ill.2d 187, 190, 32 Ill.Dec. 540, 395 N.E.2d 921.