**Helen G. ROSS, Plaintiff,**

v.

**Richard ROSS and Louise Ross, Defendants.**

No. 84 C 4549.

United States District Court, N.D. Illinois, E.D.

Oct. 29, 1984.

Fred Speck, Chicago, Ill., for plaintiff.

Thomas Brennan, Ronald Orner, Orner, Wasserman & Moore, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

This is a "dog-bite" case. On June 1, 1982, plaintiff Helen Ross was taking a vacation from her Florida home, visiting the defendants Richard and Louise Ross [1] at their Deerfield, Illinois home.[2] This diversity of citizenship makes this a federal dog-bite case. As plaintiff walked along the front sidewalk to defendants' front door, she was greeted by Prince, defendants' poodle.[3] Apparently a frisky pooch, Prince jumped on the plaintiff and knocked her over, injuring her back, arms and legs.

Plaintiff's complaint alleges two claims for relief. Count I claims that defendants were negligent in that they failed to properly control or train Prince, and they failed to warn plaintiff about the "dangerous nature of the" dog. Count II alleges that this misfeasance was willfull and wanton. Defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), arguing that the complaint fails to allege all of the essential elements of the common law counts pleaded. For the reasons stated below, we disagree with the defendants but nevertheless dismiss the complaint without prejudice and grant plaintiff leave to file an amended complaint.

▮ Illinois' substantive law governs this diversity action.[4] Under Illinois' "dog bite" jurisprudence, a victim of a dog at-

1. Although for legal purposes it is probably not significant, the complaint is silent as to whether the parties Ross are related and whether Prince's greeting was motivated from affection or hostility.

2. These facts, like those stated below, are paraphrased from the complaint, which we assume to be true for the purposes of this motion to dismiss.

3. The complaint does not specify whether the poodle is a "standard," "miniature" or "toy."

4. Illinois' choice of law rules apply to this case. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties have assumed without discussion that Illinois' tort law controls this case. This assumption is reasonable under Illinois choice of law rules because Illinois is the state "most significantly related" to the dispute. *See McIntosh v. Magna Systems, Inc.,* 539 F.Supp. 1185, 1188–89 (N.D. Ill.1982) (Aspen, J.); *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970) (Illinois courts apply "most significant relationship" test). The allegedly tortious conduct and the injury happened in Illinois, and the defendants reside in Illinois.

tack has two theories of recovery available. The first is a common law theory of negligence, which requires the plaintiff to prove, among other things, that the dog has a mischievous propensity to bite or otherwise hurt people, and that the defendants knew of this propensity. *E.g. Nelson v. Lewis*, 36 Ill.App.3d 130, 133, 344 N.E.2d 268, 271 (1976). The second theory of recovery is statutory and does not require the plaintiff to prove that the dog owner was negligent. Ill.Rev.Stat. ch. 8, § 366 (1983) provides:

> If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained.

This theory has four elements: "(1) an attack by defendant's dog; (2) injury to plaintiff; (3) absence of provocation; and (4) that plaintiff was conducting himself peaceably in a place where he had a legal right to be." *Stehl v. Dose*, 83 Ill.App.3d 440, 443, 38 Ill.Dec. 697, 699, 403 N.E.2d 1301, 1303 (1980).

 The complaint specifically alleges only a common law theory of recovery, and fails to allege the two common law elements of "mischeivous propensity" and "notice." Defendants argue that this omission renders the complaint defective.[5] We think defendants are barking up the wrong tree. Plaintiffs would surely have to allege those elements in an Illinois state court, which employs fact-pleading rules. But Fed.R.Civ.P. 8(a)(2), with its more re-laxed pleading requirements, controls this diversity action. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Under Rule 8(a)(2) we should not dismiss the complaint unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Hishon v. King & Spalding*, —— U.S. ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), *citing, Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Seventh Circuit has recently commented that this very broad pleading standard "has never been taken literally." *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (1984). The Court quoted with approval Professors Wright and Miller's interpretation of the *Conley* standard:

> "the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."

*Id., quoting,* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 at 121–23 (1969).[6] We believe that the complaint meets the *Conley* test, even as narrowed in *Sutliff*. Although the complaint does not expressly allege the two common law elements mentioned earlier, we can fairly infer them from the other allegations. The complaint does allege that the defendants negligently failed to warn plaintiff about "the dangerous nature of said

---

**5.** Defendants argue that the omission is fatal to the claim alleging willful and wanton misconduct, as well as to the ordinary negligence claim. While defendants have cited some authority as to why the allegations of negligence are defective, they cite no authority and make no arguments as to why the willful and wanton misconduct claim is defective. Accordingly, our discussion does not touch that claim. Upon amending her complaint, plaintiff may include or not include that claim as she sees fit.

**6.** A different panel of the Seventh Circuit recently reaffirmed *Sutliff's* seemingly narrow reading of the *Conley* test. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 at 1106 (7th Cir.1984). Both *Sutliff* and *Car Carriers* were antitrust cases. It is unclear at this point whether the pleading standard of those cases will apply to all cases in this Circuit or whether it will be limited to relatively complex cases, like the ones in those two opinions. We need not discuss this any further, since we have applied the *Sutliff* standard below.

poodle;" it also alleges a willful failure to warn. We can infer from these allegations, and from the general allegations of negligence, that the plaintiff intends to prove that the dog has a "dangerous nature" and that the defendants knew about it.

The complaint also alleges enough to state a claim under Ill.Rev.Stat. ch. 8, § 366, although the statute is not mentioned in the complaint, but only in plaintiff's memorandum. However, because the complaint does not now allege that defendants are liable under this statute, they would not be required to admit or deny liability in their answer to this complaint. It might be that in answering a better pleaded complaint, they would admit liability under § 366 but deny common law negligence liability. We think it would help defendants respond to the complaint and also focus discovery if plaintiff would amend the complaint to allege statutory and common law liability in separate counts. Should plaintiff submit such an amended complaint, she should also allege in her negligence count the common law "propensity" and "notice" elements, assuming, of course, that she and her counsel can satisfy Fed.R.Civ.P. 11 in doing so. This would allow defendants to either admit or deny these elements.

Accordingly, the Court will enter an order dismissing the complaint without prejudice.[7] Plaintiff has leave to amend the complaint within 10 days. Defendants shall answer or otherwise plead within 20 days after the complaint is served. The next status hearing is hereby reset to December 7, 1984, at 10:00 a.m.[8] It is so ordered.

---

7. In so doing, we have in effect converted the motion to dismiss into one for a more definite statement under Fed.R.Civ.P. 12(e). Courts occasionally do this where, as here, the pleading states a viable claim for relief but is so vague or ambiguous that the opposing party would have difficulty responding. *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1376 (1969) at 732–34.

8. Before undertaking the commitment of time and expense involved in amending the complaint and answering it, the parties might reflect upon whether they have bitten off more than they can chew in litigating Prince's allegedly errant ways in the federal courts. This just may be the opportune time to attempt to negotiate a settlement. The parties should do this and report their results to the Court at the next status hearing.