DENIS A. McGRADY, Plaintiff-Appellee, Cross-Appellant, *v.* CHRYSLER MOTORS CORPORATION *et al.*, Defendants-Appellants, Cross-Appellees.— (STARR MOTORS, INC., Defendant.)

Fourth District   No. 13397

Opinion filed March 3, 1977.

Robert F. Quinn, Ltd., of Wood River, for appellants.

Denis A. McGrady, of McGrady, Madden & McGrady, of Gillespie, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff purchased a new 1969 "Chrysler Imperial LeBaron" automobile in April 1969. The purchase was from the defendant Starr Motors, Inc. Starr Motors had, in turn, purchased through Chrysler Motors Corporation, the selling entity for Chrysler Corporation, the manufacturer of the car. The car purchased by the plaintiff was for the use of his wife and the purchase price was $7314.60. Within a week of the

purchase and on what plaintiff persuades us was a continuing basis thereafter until June 1971, the plaintiff and the members of his family sought to drive the car and had great and continuing difficulty with it. In June 1971, plaintiff determined that he would no longer attempt to use the car which was then again disabled. He called the defendant Starr Motors, Inc., and at his request, the car was towed back to the dealer's premises. Insofar as this record shows, the car is still there.

The plaintiff's difficulties with the car and the troubles encountered in an effort to keep it functioning consume much of this record, but such is not now in dispute nor really an issue upon this appeal. The two defendants who are involved in this appeal, Chrysler Motors Corporation and Chrysler Corporation, present issues relating to damages and seem not to contest the factual and evidentiary basis that determined the existence of a breach of an implied warranty as applicable to this automobile. At the time the car was returned to the selling dealer, it had some 43,400 miles on it.

In May 1972, plaintiff filed his complaint against Starr Motors, Chrysler Motors Corporation and Chrysler Corporation, alleging breach of an "implied warranty of merchantability" and sought damages measured by the purchase price, cost of repairs, inconvenience, loss of use, and for incidental and consequential damages. Plaintiff also sought exemplary or punitive damages alleging that the defendant sold or caused to be sold a defective product, that plaintiff was fraudulently induced to buy the automobile by deceptive and misleading statements in advertising, and further, that plaintiff was fraudulently induced to continue the futile attempt to allow the defendants to work on and attempt to repair the car. At one point in the pleadings, the automobile is alleged to be "a 'lemon' automobile" and a lemon is defined in the pleadings to be "a substandard vehicle with material defects."

A jury trial upon the issues thus joined resulted in a verdict for the plaintiff in the sum of $17,314.60 for actual damages, $2685.40 exemplary or punitive damages under jury instructions allowing for both actual and punitive damages. Upon the motion of the defendants, the trial court set aside the verdict for exemplary damages and upon plaintiff's offer to remit $10,000, entered a judgment in favor of the plaintiff and against all defendants for the sum of $7314.60, the exact purchase price of the automobile. Chrysler and Chrysler Motors (herein grouped as Chrysler) appeal. Plaintiff cross-appeals, seeking to eliminate the remittitur and seeks a judgment on the verdict for the full amount, including the punitive damages.

We affirm the judgment of the trial court.

By its appeal, Chrysler only presents two issues for consideration. Those issues are whether the plaintiff proved damages on his case of

breach of implied warranty, and whether the jury was properly instructed. No questions are raised on the pleadings and no questions are raised on the substantive issue of breach of implied warranty. Section 2—714 of the Uniform Commercial Code, subparagraphs (2) and (3) provide:

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered." (Ill. Rev. Stat. 1969, ch. 26, par. 2—714(2)(3).)

Thus, in this case, proceeding under a cause of action under the foregoing statutory provisions, plaintiff's damages would be the difference at the time of acceptance between the value of the goods accepted and the value it would have had if it had been as warranted. Incidental and consequential damages would be recoverable in a proper case, and we perceive this case to be in that category. A review of the evidence tells us the purchase price of the automobile with its defects. There is no express evidence in the record as to the value of the automobile at the time and place of acceptance if it had been as warranted. There is only evidence of the purchase price; there is evidence that the automobile was continually returned for repairs, that the electrical system constantly malfunctioned; that there was a defect with a bearing in the rear wheel of the automobile; that it had been returned to the dealer some 16 recorded times and that the plaintiff had found it necessary to have the car towed on several occasions and to obtain assistance in getting the automobile started. The total repair charges on the automobile were some $907. There were charges of some $157 at a repair shop other than Starr Motors, the selling dealer. Starr Motors, after its own efforts at repair, sent the car to another automobile repair shop for work. The record is not clear as to which of the parties paid which of the charges.

Section 1—106 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 1—106) provides that the remedies provided by the Code are to be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed. This section thereafter precludes consequential, special or penal damages except as specifically authorized in the Act. In White & Summers, *Uniform Commercial Code* § 10—4 (1972), it is noted:

"The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section on liberal administration of remedies [1-106] rejects any doctrine of certainty

which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances."

Upon the issue of the necessity for precision in proof of damages, the court in *Texas Sanitation Co. v. Marek* (Tex. Civ. App. 1964), 381 S.W.2d 710, 715, stated:

"In many cases, although substantial damages are established, their amount is, insofar as susceptible of pecuniary measurement, either entirely uncertain or extremely difficult of ascertainment. In such cases, plaintiff is not denied all right of recovery. The amount of damages is fixed by the court or by the jury in the exercise of sound discretion under proper instructions from the court. In the case of contracts a party who has broken his contract will not ordinarily be permitted to escape liability because of the uncertainty in the amount of damage resulting. 25 C.J.S. Damages §28, p. 495."

In Anderson, *Uniform Commercial Code* §2—715:16 (2d ed. 1971), it is noted that consequential damages that are reasonably foreseeable are recoverable; and this court's opinion in *Adams v. J.I. Case Co.* (1970), 125 Ill. App. 2d 388, 261 N.E.2d 1, discussed in White & Summers §10—4, adopts an objective approach and permits of consequential damages if they are reasonably foreseeable, including an item of damage there applicable meaning loss of profits. Mere inconvenience, above, is not compensable (see *Allen v. Edwards* (Miss. 1969), 217 So. 2d 284), nor is mental anguish a compensable item of damage when other items of damages are not involved. Thus, the rule is stated in *Allen* that "mere inconvenience, without more, is not a proper element of damages." (217 So. 2d 284, 286.) Nonetheless, *Allen* does not eliminate the possibility of damages for inconvenience when coupled with otherwise independently compensable damages.

Chrysler relies upon *Holz v. Coates Motor Co.* (1966), 206 Va. 894, 147 S.E.2d 152, 155, in urging that the damages awarded were speculative. In *Holz*, it was not even contended that the automobile did not run or that any essential part of the car continuously failed to function. The complaints there involved were minor and perhaps only subjective.

■■ In this case, to impose upon the plaintiff the burden of minutely detailing each element of damage would impose an impossible burden. Such burden would in fact be so impossible of compliance as to dilute, if not repeal, the substantive remedy. Thus, we hold that the trier of fact, the jury, can assess damages for inconvenience, aggravation and loss of use, notwithstanding the want of mathematical specifics so long as such assessment is reasonable and not punitive. An award based upon a bona fide effort to compensate for the consequences of the defects that

establish the breach of warranty is a remedy that the Commercial Code seeks to afford. That award, after the remittitur, was reasonable.

■■ While punitive damages may be recovered in exceptional cases involving a breach of contract when the breach amounts to an independent wilful tort, this is not such a case. (*Alsip Homebuilders, Inc. v. Shusta* (1972), 6 Ill. App. 3d 65, 284 N.E.2d 509; see also 65 Ill. B.J. 152 (1976).) Thus it was error to instruct the jury upon the issue of exemplary damages. Such error was corrected by the judgment entered and we need not reverse under such circumstance. See *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1973), 11 Ill. App. 3d 264, 296 N.E.2d 365.

Affirmed.

GREEN and REARDON, JJ., concur.