DORA L. JACKSON, Plaintiff-Appellee, *v.* H. FRANK OLDS, INC., Defendant-Appellant.

First District (5th Division)    No. 77-1020

Opinion filed October 20, 1978.

Bloom, Denberg & Vanasco, Ltd., of Chicago, for appellant.

Reese and Schaffner and Harry B. Aron, both of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court: ·

Plaintiff brought this action to recover damages from defendant arising from the sale to her of a three-year-old used car. Although plaintiff originally asked for rescission in her complaint, the trial judge dismissed this count because the car had been stolen. He gave plaintiff leave to file an amended complaint. In the amended complaint filed on August 28, 1975, plaintiff alleged in two counts that (I) despite certain representations made by defendant's agent, the automobile was not fit for the ordinary purpose of driving and completely broke down within one week of purchase and (II) defendant's misrepresentations were wilfully made. She prayed for compensatory damages of $4,000 on count I and punitive damages of $15,000 on count II.

On June 23, 1976, defendant filed a motion to dismiss count I of plaintiff's amended complaint on the grounds that the only remedy available to plaintiff was under the limited warranty set forth in section 2L of the Consumer Fraud Act (Ill. Rev. Stat. 1973, ch. 121½, par. 262L) and not under any of the implied warranties of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, pars. 2—314, 2—315). Although the order disposing of defendant's motion does not appear in the record, the

trial court apparently denied the motion to dismiss, and the case went to trial before a jury on both counts. The jury returned a verdict in favor of plaintiff and awarded damages of $2,400 on count I, and $2,500 on count II. After considering defendant's post trial motion, the judge granted defendant's motion for a directed verdict as to count II and ordered that a new trial be held on count I unless plaintiff remitted the sum of $700. Plaintiff filed a remittitur thus reducing her award to $1,700 plus costs.

Both parties appeal the judgment below. Defendant contends that: (1) plaintiff is not entitled to recover damages under count I since her exclusive remedy is under the used car warranty provisions of the Consumer Fraud Act (Ill. Rev. Stat. 1973, ch. 121½, par. 262L) (2) the trial judge erred in refusing to strike and to instruct the jury to disregard the testimony concerning certain exhibits. Plaintiff maintains in her cross-appeal that the trial judge erred in directing a verdict in favor of defendant on the punitive damages count since defendant's actions were willful and malicious. We affirm.

Since no verbatim record was made at trial, the trial court certified the Report of Proceedings prepared by defendant pursuant to Supreme Court Rule 323(c) (Ill. Rev. Stat. 1973, ch. 110A, par. 323(c)). This report of proceedings discloses the following:

Plaintiff testified that in August of 1972 she and her son visited defendant's used car lot and spoke to Edgar Cheatum, a salesman, about obtaining a car in "A-1 mechanical condition" for a trip to Arkansas. She examined a 1969 Pontiac Grand Prix, returned the next day to take it for a test drive, and purchased it for approximately $2,500. She was given a $500 credit for the trade in of her old car and was told that she would receive the remaining benefits of a 50,000 mile, 5-year warranty on the Pontiac from the original owner in addition to a "30 day, 50/50 warranty."[1] A few days later her husband, son and another relative took the car on a trip to Arkansas. The car broke down in Bitner, Illinois, where they abandoned it and continued to Arkansas by bus. They returned to Chicago by bus as well. Plaintiff's husband and her father subsequently returned to where the vehicle had been abandoned and arranged for it to be towed to defendant's shop for repairs. Plaintiff called Cheatum and informed him that she wanted another car. He told her that the car was still under a warranty and still her car. Defendant retained the vehicle for a month and put a new engine in it. During the third week plaintiff received a loaner vehicle from defendant.

When her repaired car was returned to her, it again broke down and she took it to a gas station. An undated bill in the amount of $25 for inspection of the transmission was admitted into evidence. The car broke down on

---

[1] This warranty means that plaintiff and defendant would share equally the cost of repairs over a 30-day period.

several more occasions and was repaired by plaintiff's cousin. Finally, the vehicle became completely inoperable and plaintiff left it in a lot next to her home. It was stolen from this lot in March of 1974.

During cross-examination, plaintiff stated that she did not pay for any of the repairs made by defendant. She received $800 from her insurance company for the theft of the vehicle. The insurance form indicated that as of the date of the theft the mileage on the car was 48,000.

Edgar Cheatum testified that he is employed as a car salesman by defendant. He sold the 1969 Pontiac to plaintiff whom he knew on a social basis and to whom he had sold another car on a previous occasion. He did not recall whether plaintiff requested a car in A-1 mechanical condition or if she stated that she needed the car for a trip to Arkansas.

Cheatum further testified that since the car sold to plaintiff was a Pontiac and defendant was an Oldsmobile dealer the repairs were made by Al Abrams Pontiac. On at least one occasion, Cheatum himself went to the Pontiac dealer to pick up plaintiff's car. He then drove it approximately two blocks but did not like the way it sounded so he returned it immediately for further repairs.

Both at the time the vehicle was obtained from its original owner and at the time it was sold to plaintiff it had about 20,000 miles on its odometer. Prior to the sale to plaintiff, Cheatum inspected the vehicle and found several things wrong which he arranged to have repaired. All repairs were made at no cost to plaintiff. He told plaintiff to bring him all of the automobile parts that had been repaired during the trip to Arkansas and that she would receive credit for her payments. She complied and he put the parts in two boxes that were destroyed in a fire that subsequently occurred at defendant's place of business.

Plaintiff's husband, James Jackson, testified that he, his wife's son and another relative started to travel in the vehicle to Arkansas, but the car broke down in Benton, Illinois.[2] They had the car towed to a gas station where the thermostat was replaced. Plaintiff's counsel then offered into evidence a receipt from a service station in Benton. Defendant objected on the grounds that Jackson was not a party to the lawsuit, nor was there evidence that he had assigned any of his claims for repairs to plaintiff. Furthermore, the bill was not marked paid. The court then gave defendant the opportunity to voir dire the witness.

Upon voir dire, Jackson testified that he no longer lived with his wife, that she paid for the car herself and that there was no assignment in writing between them of any claims he may have had against defendant. The court then denied plaintiff's motion for admission of this exhibit and

---

[2] We are aware that during her testimony, plaintiff stated that the car broke down in Bitner, Illinois.

also denied defendant's motion to strike or to instruct the jury to disregard the testimony concerning the exhibit.

Jackson then testified that they continued their trip and the car began overheating and water started spilling out of the engine. They stopped and arranged for the car to be towed to a service station in Mt. Vernon, Illinois. Plaintiff attempted to offer the bill from this service station. Defendant objected on the same grounds as before and the trial judge refused to admit the exhibit and also refused to instruct the jury to disregard the testimony concerning the exhibit. Plaintiff's attempts to offer the receipts for the replacement of the clutch, fan, thermostat and for various other repairs were similarly objected to, and denied admittance by the trial judge. Jackson testified over defendant's objection with regard to his payment for replacement of the water pump.

During cross-examination, Jackson testified that his reason for travelling to Arkansas was to attend his sister's funeral. His sister died one week after the automobile was purchased and neither he, nor to the best of his knowledge, his wife had any intention of travelling to Arkansas prior to the day of his sister's death.

Frank Garcia, the president of defendant corporation, testified that on one occasion he went to Al Abrams Pontiac to see if they had repaired plaintiff's vehicle. While there, he observed that the tires on the car were bald and that the engine was disassembled and in the process of being repaired. Garcia further stated that Al Abrams Pontiac is presently out of business and their records regarding plaintiff's vehicle were no longer available.

Luttier Farrell, plaintiff's cousin, testified that he had previously been employed as an automobile mechanic. A few days after plaintiff purchased the car, he examined it. Farrell attempted to testify regarding plaintiff's exhibit consisting of three receipts from an auto store. Defendant objected on the ground that Farrell had no claim against defendant. The court allowed defendant to voir dire the witness. During voir dire, Farrell could not explain why the figures on two of the invoices appeared to be altered. The court refused to admit the receipts and further denied defendant's motion to strike Farrell's testimony concerning the exhibits or to instruct the jury to disregard his testimony.

At the close of plaintiff's case, defendant made a motion for a directed verdict. The court granted the motion with respect to count II, but indicated on the next day that it would instead reserve its ruling.

Larry Mitchum testified next. He stated that he was a service director of defendant company during the period in question, his duties consisting of writing repair orders and supervising repairs. As had been testified to earlier, all repairs were made by Al Abrams Pontiac and plaintiff was

never charged. Four new tires had been placed on the vehicle prior to plaintiff's purchase. Additional records of repairs were destroyed in a fire.

OPINION

Although not clearly articulated in her amended complaint, plaintiff's cause of action was apparently predicated upon defendant's breach of the implied warranties of merchantability and fitness for a particular purpose under the Uniform Commercial Code. (Ill. Rev. Stat. 1973, ch. 26, pars. 2—314, 2—315.) Defendant argues that the used car warranty under the Consumer Fraud Act (Ill. Rev. Stat. 1973, ch. 121½, par. 262L) is plaintiff's exclusive remedy because it was enacted subsequent to the Uniform Commercial Code and specifically covers the situation here.

Section 2L of the Consumer Fraud Act (Ill. Rev. Stat. 1973, ch. 121½, par. 262L) provides *inter alia*:

"(a) The dealer is liable to the purchasing consumer for the following share of the cost of the repair of Power Train components for a period of 30 days from date of delivery, unless such repairs have become necessary by abuse, negligence, or collision. The burden of establishing that a claim for repairs is not within this Section shall be on the selling dealer. The dealer's share of such repair costs is:

(1) in the case of a motor vehicle which is not more than 2 years old, 50%;

(2) in the case of a motor vehicle which is 2 or more, but less than 3 years old, 25%;

(3) *in the case of a motor vehicle which is 3 or more, but less than 4 years old, 10%*; and

(4) in the case of a motor vehicle which is 4 or more years old, none.

(b) Notwithstanding the foregoing, such a dealer and a purchasing consumer may negotiate a sale and purchase that is not subject to this Section if there is stamped on any purchase order, contract, agreement, or other instrument to be signed by the consumer as a part of that transaction, in at least 10-point bold type immediately above the signature line, the following:

'THIS VEHICLE IS SOLD AS IS WITH NO WARRANTY AS TO MECHANICAL CONDITION'

(c) As used in this Section, 'Power Train components' means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings.

(d) The repair liability means that the dealer will make necessary Power Train component repairs in his shop, or in the shop of his service affiliate, on the basis of his regular list price charge for parts and labor, where the flat rate list price does not exceed 50% of the selling price of the vehicle at the time repairs are requested.

(e) The age of the vehicle shall be measured according to the manufacturer's model year designation as shown on the Certificate of Title or Registration Certificate. Vehicles shall be designated as current year models, one year old, 2 year [sic] old, and so forth according to the time that has elapsed since January 1 of the appropriate model year so designated.

(f) This Section does not preclude the issuance of a warranty or guarantee by a motor vehicle dealer or motor car manufacturer that meets or exceeds the basic provisions of paragraph (a).

Any person who violates this Section commits an unlawful practice within the meaning of this Act." (Emphasis added.)

In *Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d 348, 292 N.E.2d 168, our court considered the issue of whether the purchaser of a five-year-old used car was entitled to recover under the implied warranties of the Uniform Commercial Code when the transmission broke down and the brakes completely failed. The court held that the warranties under the Code could and did apply to the sale of a used automobile. Although the court did not have to consider the issue presented in this case because section 2L of the Consumer Fraud Act does not afford any repair warranty to the purchaser of a used automobile older than four years, the court in a footnote, sets forth section 2L and states:

"The limitation of this statute to vehicles 4 years old or less does not mean that buyers of cars older than that are not protected by any implied warranties of merchantability or fitness. Rather, under the statute, the burden is on the seller to show that the claim for repairs is outside the statute. However, we believe the burden shifts to the buyer of a motor vehicle 4 or more years old (as in the present case) who must then assume the burden of proving that seller has breached his warranties and thereby assert his remaining rights under appropriate sections of the Uniform Commercial Code.

Also, it should be noted that even though automobile brakes are not Power Train components warranted by this Act, they are covered by the inclusive provisions of Sections 2—314 and 3—315 infra." 9 Ill. App. 3d 348, 353, 292 N.E.2d 168, 172.

Although plaintiff maintains that *Overland* is dispositive of this appeal, we cannot agree. Nor can we agree with defendant who contends that it is

completely inapposite because the car involved there was too old to benefit from the used car warranties of the Consumer Fraud Act, and thus the court was forced to turn to the Uniform Commercial Code to afford the purchaser a remedy.

We believe that the court in *Overland* impliedly recognized the applicability of both the Consumer Fraud Act and the Uniform Commercial Code to the sale of used automobiles. We do not believe that the applicability of the Code hinges upon the age of the car as defendant would have us hold.

■■■ It is a primary rule of statutory construction that the courts disfavor the implied repeal of statutes. Rather, when two statutes relate to the same subject matter, provided that the newer act does not expressly state that it is the exclusive remedy, the two should be construed harmoniously. (*People ex rel. Scott v. Illinois Racing Board* (1973), 54 Ill. 2d 569, 301 N.E.2d 285; *Chrysler Credit Corp. v. Ross* (1975), 28 Ill. App. 3d 165, 328 N.E.2d 65; *People v. Gardner* (1973), 15 Ill. App. 3d 255, 304 N.E.2d 125.) Although the Consumer Fraud Act was enacted subsequent to the Uniform Commercial Code, there is no express statement in the new Act that it was intended to repeal the earlier Act. In fact, since the Consumer Fraud Act was intended to bequeath the Attorney General with special enforcement powers so as to aid in the protection of consumers, the used car warranties under this Act may be viewed as a supplement to the remedies afforded to consumers under the Uniform Commercial Code. We thus hold that the implied warranties of the Code are applicable here.

■■ The jury apparently believed from the testimony that the automobile was not fit for the ordinary purpose for which it was to be used, that is, driving. (Ill. Rev. Stat. 1973, ch. 26, par. 2—314(2)(c).) Although defendant contends that the evidence tendered that plaintiff drove the car 28,000 miles in a year and a half's time militates against a finding that the car was unmerchantable, the jury was entitled to believe the testimony that the defects in the car substantially impaired the value of the car to plaintiff (*Collum v. Fred Tuch Buick* (1972), 6 Ill. App. 3d 317, 285 N.E.2d 528) and rendered the vehicle unmerchantable. Defendant did not exclude or modify the implied warranty of merchantability in the sales contract because it did not mention the word "merchantability" as required by section 2—316(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—316(2)).

Furthermore the trial judge adjusted the jury's award of damages by compelling plaintiff to file a remittitur of $700. Although the record does not reflect the legal theory upon which the damage award was based, it was not premised on mere conjecture as defendant suggests. Rather the jury believed that plaintiff properly revoked her acceptance of the automobile (Ill. Rev. Stat. 1973, ch. 26, par. 2—608), and the trial judge

adjusted the damages to reflect the difference at the time and place of acceptance between the value of the car had it been as warranted, that is, what plaintiff paid for the automobile, and what the car was actually worth. (Ill. Rev. Stat. 1973, ch. 26, par. 2—714(2); *McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 360 N.E.2d 818.) Since there was no express evidence of the true value of the car at the time and place of acceptance, the judge assessed the damages as the difference between the purchase price and the value the insurance company attributed to the car at the time it was stolen. Because of our disposition of this matter, we need not consider whether defendant also breached the warranty of fitness for a particular purpose. Ill. Rev. Stat. 1973, ch. 26, par. 2—315.

■■ Defendant next contends that the trial judge committed reversible error in refusing to strike or instruct the jury to disregard the testimony concerning certain exhibits. We disagree.

The testimonies in issue are those of plaintiff's husband and her cousin, respectively, concerning certain bills for repairs. The bills themselves were not admitted because no evidence was offered that there was a written assignment of claims between plaintiff and her husband or cousin. In reviewing the record, we believe that the jury's verdict and damage award were not based on the cost of any particular repair but on their belief that the series of frequent breakdowns at various locations rendered the vehicle unmerchantable, entitling plaintiff to all of her money back. The jury was entitled to know of the events surrounding each repair, even though they should have known only of the money expended by plaintiff herself.

We further note that defendant could have asked for a limiting instruction to be tendered to the jury at the close of the evidence, which he failed to do. (*Storm v. Brown* (1973), 15 Ill. App. 3d 29, 303 N.E.2d 42.) We thus find that the error complained of, if any, is not so prejudicial as to warrant a reversal.

In considering plaintiff's contention that she was entitled to punitive damages, we hold that the facts presented here support the trial judge's decision to direct a verdict in favor of defendant. In Illinois, punitive damages are generally not awarded in breach of contract actions, unless the acts complained of arise to the level of an independent tort and are done with willful, wanton, or malicious intent. *Stamatiou v. U.S. Gypsum Co.* (1975), 400 F. Supp. 431, *aff'd* (1976), 534 F.2d 330; (1977), 547 F.2d 1171; *McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 360 N.E.2d 818.

■■ Although defendant never actually succeeded in making the car operable, it did repeatedly attempt to honor its promise. Although plaintiff no doubt suffered inconvenience and aggravation, her recovery of the full purchase price of the automobile is reasonable compensation

580

here. See *McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 360 N.E.2d 818.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

LORENZ and MEJDA, JJ., concur.