This memorandum opinion constitutes our findings of fact and conclusions of law.

The AMERICAN SOCIETY OF CONTEMPORARY MEDICINE, SURGERY & OPHTHALMOLOGY, Plaintiff,

v.

MURRAY COMMUNICATIONS, INC., Ophthalmology Times, Inc. and David L. Murray, Defendants.

No. 81 C 2789.

United States District Court, N. D. Illinois, E. D.

Aug. 23, 1982.

Jack Joseph, Joseph & Friedman, Chicago, Ill., for plaintiff.

Michael P. Mullen, James T. Griffin, Burke, Griffin, Chomicz & Wienke, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff, The American Society of Contemporary Medicine, Surgery & Ophthalmology ("the Society"), brought this five-count diversity action against defendants, Murray Communications, Inc. ("Murray Communications"), David L. Murray ("Murray") and Ophthalmology Times, Inc. ("Times, Inc."), to recover damages arising from Murray Communications' alleged breach of contract in publishing two of the Society's scholarly journals, *Glaucoma* and *Annals of Ophthalmology* ("Annals"). The Society also alleges that its contract with Murray Communications to publish the journals was induced by defendants' fraud. Defendant Murray Communications has answered the complaint and asserted a variety of counterclaims against the Society and counterdefendants, Dr. Randall T. Bellows and Dr. John G. Bellows ("the Bellows"). Presently before the Court are the Society's motions for summary judgment on Count I and judgment for liability on Count III of the complaint as well as dismissal of the third, fourth and fifth counterclaims.[1] Murray Communications has moved to dis-

---

1. The Bellows have joined in the Society's motion to dismiss the counterclaims. The Bellows have also moved, in the alternative, for summary judgment on the third, fourth and fifth counterclaims. The defendants have moved to strike the affidavit of Randall Bellows, filed in support of these motions, on the ground that "it attempts to support a motion to dismiss which tests only the pleadings and not the evidence." As a practical matter, however, the affidavit also supports the Bellows' alternative motion for summary judgment for which an affidavit is entirely appropriate. In any event, our disposition of these counterclaims, *infra*, renders the defendants' objection to the Bellows' affidavit academic.

The Society has moved to strike the affidavit of David L. Murray, filed in opposition to the Society's motion for summary judgment, on the ground that the affidavit violates the standards of Rule 56(e), Fed.R.Civ.P. Although Murray's affidavit contains a variety of legal conclusions and factual references to which he has no personal knowledge, the affidavit also makes reference to a variety of material facts and admissible evidence. Rather than striking the entire affidavit, therefore, the Court will simply disregard those portions of the affidavit which clearly violate the standards of Rule 56. *Wimberly v. Clark Controller Co.,* 364 F.2d 225, 227 (6th Cir. 1966); *Cohen v. Ayers,* 449 F.Supp. 298, 321 (N.D.Ill.1978), *aff'd,* 596 F.2d 733 (7th Cir. 1979).

The profusion of peripheral motions and acerbic briefs filed by the parties on all sides of this lawsuit evidence the wisdom of Oliver Wendell Holmes when he observed that "[l]awyers spend a great deal of their time shoveling smoke." More than enough smoke has been shoveled in the present case.

miss Counts IV and V of the complaint.[2] This Court will address these motions in seriatim.

## I. Motion For Summary Judgment on Count I

The contract executed between the Society and its publisher Murray Communications in July, 1979, provided that Murray Communications share with the Society 50 percent of subscription revenues obtained from subscribers other than "controlled circulation ophthalmologists,"[3] 20 percent of all reprint revenue and up to 20 percent of advertising revenues. Contract, ¶¶ 7, 9.2, 9.3, 9.4, 9.6. Count I of the Society's complaint, based upon "[a] preliminary audit of defendant Murray Communications' books[,]" seeks recovery of at least $38,713, plus interest, in unpaid subscription, reprint and advertising revenues due the Society under these terms. Murray Communications, while not challenging the results of the audit as such or the Society's interpretation of the contract, argues that summary judgment on this claim is premature because the five counterclaims asserted in this case seek to recover from plaintiffs and counterdefendants an amount well in excess of that sought in Count I of the complaint. That the Society's liability under a variety of independent claims ultimately might reduce or eliminate the defendants' net liability in this case does not, however, raise a genuine issue of fact material to resolution of Count I.

■ On the other hand, the third counterclaim advanced by Murray Communications alleges, *inter alia,* that the Society and the Bellows fraudulently concealed more than $70,000 in subscription revenues obtained from subscribers other than controlled circulation ophthalmologists.[4] In his affidavit opposing summary judgment,

David Murray makes clear that up to 1,200 of these hidden subscribers were ophthalmologists living outside of the United States and various institutions in the United States. Murray Affidavit, ¶ 23. Under the contract, those revenues should have been split evenly with Murray Communications. Contract, ¶¶ 9.2, 9.3. Because the amount of subscription revenues due each party under the contract remains a genuine issue of material fact, summary judgment on this count must be denied.

## II. Motion for Summary Judgment on Liability on Count III

Paragraph 3.3 of the contract provides that "[Murray Communications] agrees to publish at least 1,300 editorial pages per year in [*Annals*] and at least 300 editorial pages in [*Glaucoma*]." Count III of the Society's complaint seeks to recover $238,000 from defendants for Murray Communications' alleged failure to publish the required number of editorial pages in either journal. Although Murray Communications does not dispute the shortfall, the defendant argues that its limited publication did not breach the parties' agreement because the parties intended that the minimum page requirement would take effect only after a sufficient amount of advertising could be generated to account for 45 percent of the total number of pages published. Murray Affidavit, ¶ 5. Contract, ¶ 3.3. The lack of available advertising, defendant asserts, excuses the shortfall in the number of editorial pages published.

■ Although the contract does not, on its face, reflect the intention asserted by Murray Communications, it is clear under Illinois law that extrinsic evidence is admissible in order to determine whether the parties' written agreement is as complete and unambiguous as it appears and whether

2. Defendants Murray and Times, Inc. have joined Murray Communications' motion to dismiss Count V of the complaint.

3. The contract does not clearly define "controlled circulation ophthalmologists." Paragraph 8 of the contract contains language that suggests that this group includes those "on the

current American Medical Association ophthalmology mailing list, which is updated each month...."

4. The Society and the Bellows' motions to dismiss the third, fourth and fifth counterclaims will be discussed in Section V, *infra.*

the parties intended the instrument to be controlling under all circumstances. *Ortman v. Stanray Corp.,* 437 F.2d 231, 235 (7th Cir. 1971); *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.,* 49 Ill. App.3d 258, 7 Ill.Dec. 648, 652, 364 N.E.2d 939, 943 (1st Dist. 1977). Taking the extrinsic evidence submitted by Murray Communications into account, the Court holds that the defendant's failure to publish the number of pages delineated in the agreement does not, as a matter of law, establish a breach of contract. Moreover, Murray Communications' affirmative defenses to this claim raise a variety of factual issues which cannot be resolved on this record.[5] Accordingly, the Society's motion for summary judgment on Count III will be denied.

### III. Motion to Dismiss Count IV of the Complaint

Count IV of the complaint alleges that Murray Communications damaged the Society's good will and the reputation and standing of its scholarly journals by wilfully and maliciously publishing and distributing *Annals* and *Glaucoma* in a materially substandard manner. Complaint, ¶ 8. The Society seeks to recover punitive as well as compensatory damages as the result of defendant's conduct. Murray Communications has moved to dismiss this count on the ground that the Society is merely "attempting to create a tort cause of action out of an alleged breach of contract by pleading that the breach was willful and malicious...." Motion to Dismiss, ¶ 3.

The principle is well established in Illinois that a party suing for conduct amounting to a breach of contract is entitled only to compensatory damages. *Hayes*

v. *Moynihan,* 52 Ill. 423, 426 (1869); *Hutchinson v. Brotman-Sherman Theatres, Inc.,* 94 Ill.App.3d 1066, 1078–79, 50 Ill.Dec. 422, 419 N.E.2d 530 (1981). Punitive damages are recoverable only when the breach constitutes an independent and wilful tort accompanied by fraud, malice, wantonness or oppression. *Garman v. New York Life Insurance Co.,* 501 F.Supp. 51, 53 (N.D.Ill. 1980); *McGrady v. Chrysler Motors Corp.,* 46 Ill.App.3d 136, 141, 4 Ill.Dec. 705, 360 N.E.2d 818 (4th Dist. 1977). *See also* Restatement (Second) of Contracts, § 355 (1979). Although the conduct of which the Society complains in Count III may support a claim for breach of contract, that conduct also states an independent claim for recovery under a tort theory. The Society alleges, in essence, that by its poor workmanship, Murray Communications deliberately interfered with the Society's business and professional relationships with its contributors, members, subscribers, donors and advertisers. In this respect, the Society's claim is akin to cause of action for an intentional interference with a prospective business opportunity.[6] *Cf. City of Rock Falls v. Chicago Title & Trust Co.,* 13 Ill. App.3d 359, 363, 300 N.E.2d 331 (3d Dist. 1973). That the same conduct may also constitute a breach of contract should not deprive the Society of the opportunity to seek punitive damages for conduct Illinois law regards as tortious. Accordingly, the defendants' motions to dismiss Count IV will be denied.

### IV. Motion to Dismiss Count V of the Complaint

In Count V of its complaint, the Society alleges that at the time of negotiating the

---

**5.** For example, the Society asserts that because the minimum page provision of the contract was calculated on the number of pages published annually, the Society "could not have known whether Murray [Communications] would meet the minimum page requirement until the entire year had elapsed." Society's Reply Brief, p. 8. Thus, the Society argues, there is no factual basis for defendants' modification, waiver, prevention, estoppel, laches and failure to mitigate defenses. Given that Murray Communications allegedly fell over 500 pages short of the quota set for *Annals* and 300

pages short of the quota set for *Glaucoma,* the reasonableness of the Society's ignorance of Murray Communications' "breach" is a genuine issue of fact.

**6.** Part of the confusion stems from the fact that the Society has failed to identify the tort theory on which this claim is based. Although hardly conducive to the orderly prosecution of this suit, the Society's less than artful framing of this claim does not merit dismissal. The Society has alleged the essential elements of a cause of action sounding in tort.

contract, the defendant Murray fraudulently misrepresented to plaintiffs that Murray Communications owned a variety of successful professional journals including *Ophthalmology Times* and *Urology Times.* Complaint, ¶¶ 8, 9. Contract, ¶ 19. In fact, the Society later learned,[7] these publications are owned by separate corporations founded by Murray and operated from Murray Communications' office in New York. Murray purportedly misrepresented the ownership of these other journals in an effort to induce the Society to enter into the contract at issue in this case. The Society alleges that it relied to its detriment on Murray's misrepresentation by entering into the contract with what plaintiff believed to be "a substantial enterprise" capable of satisfying any foreseeable damage claim which might result from a breach of contract involving Murray Communications. Based on these allegations, the Society seeks to hold defendants Murray and Times, Inc. jointly and severally liable for the breach of contract and tortious conduct alleged in Counts I through IV. Defendants have moved to dismiss Count V.

■ The Society's claim is conceptually defective. Under Illinois law, a plaintiff seeking to assert a claim for fraudulent misrepresentation must allege that the defendant knowingly made a false representation of material past or existing fact intended to induce the recipient to take affirmative action and that the recipient suffered injury as the result of his reasonable reliance on that representation. *Merit Insurance Co. v. Colao,* 603 F.2d 654, 658–59 (7th Cir. 1979), *cert. denied,* 445 U.S. 929,

100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Soules v. General Motors Corp.,* 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 402 N.E.2d 599 (1980). In the present case, although the Society alleges that it was induced to enter this agreement by reason of Murray's misrepresentation, the injury of which plaintiff complains does not stem from the agreement itself. The Society has not alleged and this Court cannot infer from the complaint that Murray Communications' purportedly substandard performance under the contract was caused by or otherwise related to Murray's misrepresentation. Rather, the Society's alleged injury stems from Murray Communications' likely inability to satisfy a future judgment arising from the defendants' performance under the contract. In other words, the Society has not yet suffered any injury resulting from Murray's misrepresentation. The facts underlying Count V will become actionable, therefore, only if and when plaintiff prevails on Counts I through IV and then only if Murray Communications is unable to satisfy the resulting judgment.[8]

In the absence of an actionable claim for fraud, the Court will not pierce the "corporate veil" to permit the Society to proceed against Times, Inc. Accordingly, the Court will grant defendants' motion to dismiss Count V of the complaint.

### V. Motion to Dismiss Murray Communications' Third, Fourth and Fifth Counterclaims

In its third, fourth and fifth counterclaims, Murray Communications alleges

---

7. Defendants raise considerable smoke in their allegation that the information underlying Count V was learned in the course of confidential settlement negotiations between the parties. The crux of the Society's claim, however, was learned in Daniel Murray's disposition, a matter already of record in this case. In the course of that deposition, Murray stated that Murray Communications did not own *Ophthalmology Times* and *Urology Times.* Thus, regardless of Murray Communications' ability to satisfy the Society's claims under Counts I through IV, the actual "fraud" alleged in Count V was revealed outside of the parties' settlement discussions. Accordingly, defendants'

motion to strike paragraph 13 of Count V will be denied.

8. The principle is clear in Illinois that a party which has been fraudulently induced to enter into a contract is entitled to the benefit of its bargain. *Cf. Posner v. Davis,* 76 Ill.App.3d 638, 644–45, 32 Ill.Dec. 186, 395 N.E.2d 133 (1st Dist. 1979). At this time, however, Murray's misrepresentation has not deprived the Society of the benefit of its bargain with Murray Communications. Rather, the benefit of the Society's bargain has been deprived by the independent intervening circumstance of Murray Communications' breach of contract.

that the Society and the Bellows engaged in a scheme to conceal from the defendant over $70,000 in subscription revenues owed, in part, to Murray Communications under the contract. Murray Communications also alleges that the Society and Bellows' use of the mails to further this fraud constitutes a pattern of racketeering activities in violation of the RICO statute, 18 U.S.C. § 1961. The Society and the Bellows have moved to dismiss these charges on the ground that they fail to state a claim for which relief can be granted.

The Society urges the Court to dismiss these counterclaims because Murray Communications was not entitled to share in the subscription or donation revenues allegedly concealed by plaintiff and counterdefendants. The contract specifically provides that all subscription and donation revenues obtained from "controlled circulation ophthalmologists" would be retained by the Society and would not be shared with Murray Communications. Contract, ¶ 9.1. The Society argues that because the revenues in question here were obtained from controlled circulation ophthalmologists and not from institutional subscribers in the United States or individuals outside of the United States, Murray Communications has failed to state a claim for breach of contract or fraud.

■ As a threshold matter, the Court notes that the Society's characterization of the counterclaims is only partially accurate. At least some of the revenue at issue in these counterclaims was obtained from sources other than controlled circulation ophthalmologists. As already indicated with respect to the Society's motion for summary judgment, Murray Communications alleges that at least 1,200 concealed subscribers were individuals and institutions not included within the ranks of controlled circulation ophthalmologists. Murray Affidavit, ¶ 23. Although Dr. Randall Bellows has testified that the Society never "receive[d] either donation or subscription income from anyone who was not a U. S. controlled circulation recipient, except to the extent that it received shared revenue

from Murray Communications," that testimony merely highlights the factual dispute between the parties. Taking the facts on this record in the light most favorable to Murray Communications, the Court cannot grant the Society's motion to dismiss these counterclaims or the Bellows' motion for summary judgment.

■ On the other hand, to the extent that these counterclaims allege that the Society concealed subscription revenues obtained from controlled circulation ophthalmologists, Murray Communications has failed to state a claim for relief under either a breach of contract or a fraud theory. The Society's failure to account for such revenues does not constitute a breach of contract because paragraph 9.1 of the contract expressly provides that subscription and donation revenues from controlled circulation ophthalmologists would not be shared with Murray Communications. Murray Communications could not have suffered injury from its failure to learn of revenues it was not entitled to share.

Murray Communications also alleges rather vaguely that it was fraudulently induced either to enter into this agreement or to continue publishing under the agreement by reason of counterdefendants' material misrepresentation that the Society was not currently and would not in the future solicit donations or subscription revenue from controlled circulation ophthalmologists. To the extent such a misrepresentation concerned the Society's future intention, it was not fraudulent. To the extent such a misrepresentation concerned the Society's current policy or practice, it was not material. Murray Communications had previously conceded such revenues to the Society at the time of entering into the contract. Murray Communications cannot now complain of an unfavorable bargain simply by characterizing the bargain as fraudulent.

Accordingly, the Society's motion for summary judgment on Counts I and III of the complaint are denied. Murray Communications' motion to dismiss Count IV is also denied. Murray, Times, Inc. and Murray Communications' motion to dismiss Count V

**468**

is granted. The Society and Bellows' motions to dismiss the third, fourth and fifth counterclaims are granted only insofar as those claims relate to revenues obtained from controlled circulation ophthalmologists. The balance of the Society and Bellows' motions to dismiss the counterclaims is denied. It is so ordered.