**Don CRANK, Plaintiff/Respondent,**

v.

**FIRESTONE TIRE & RUBBER CO., Defendant/Appellant.**

**No. WD 36046.**

Missouri Court of Appeals, Western District.

June 4, 1985.

---

James Bandy (argued), Kansas City, for defendant/appellant.

Michael L. Taylor (argued), St. Joseph, for plaintiff/respondent.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

The jury found in favor of plaintiff and awarded him $7,000 on his action for defendant's breach of warranty in its installation of an oil filter on plaintiff's automobile. Defendant complains of insufficient evidence to warrant submission of the case to the jury, of errors in the instructions and in the admission of evidence, and of excessiveness of the verdict. We affirm the judgment on liability and remand the case with directions for retrial on the issue of damages.

Because we review the sufficiency of the evidence to submit the case to the jury, we set forth the following statement of facts in the light most favorable to the plaintiff, according him all reasonable inferences and disregarding defendant's evidence except as it may support the verdict. *Grossman Iron & Steel Co. v. Bituminous Casualty Corp.*, 558 S.W.2d 255, 258 (Mo.App.1977).

Mr. Crank is a physical education teacher in the St. Joseph School District. In February of 1982, in response to defendant's newspaper advertisement, Mr. Crank took his diesel Volkswagen Rabbit to defendant for an oil change and installation of a new oil filter. The advertisement stated that Firestone was skilled in changing the oil and oil filters on American and domestic vehicles, including diesel Rabbits. Mr. Crank testified that defendant's assistant manager told him that they were able to change the oil and filter on his Rabbit. Defendant does not complain of the admission of that testimony.

Mr. Crank took his car in for the requested service, and Mark Lang, defendant's employee, did the work on it. The filter was sold under the Firestone label but was actually manufactured by an Oklahoma company. Mr. Lang testified that he installed the filter in accordance with instructions found in a Firestone installation manual. The instructions directed the installer to "tighten one turn after gasket contacts base." He testified that he tightened the filter by hand without the use of a torque wrench and that he never uses a torque wrench unless some oil leakage appears.

After the work, he ran the engine for several minutes but observed no leakage.

That night Mr. Crank drove his car to officiate at a basketball game in Trenton, which is seventy miles from St. Joseph. On his return trip, sometime shortly after 10:00 p.m., the oil pressure gauge warning light came on, and he slowed to twenty miles per hour, but soon after that the car came to a complete stop. Mr. Crank looked at the car's underside and observed that it was splattered with oil. He had the car towed to a Volkswagen repair shop in St. Joseph at a cost of $89.00 and finally arrived home after 3:00 a.m.

When Mr. Joe Zuptich, defendant's service manager, later inspected the oil filter before its removal from the car, he saw that the gasket between the oil filter and the engine had been ruptured, "blown out." The engine was ruined and had to be replaced. Mr. Crank testified that, with a ruined engine, the car was worthless. The mechanic who repaired the car, Mr. Bass, testified that the engine was destroyed because it had been run without enough oil pressure which was caused by insufficient oil. He further testified that a filter for a diesel Rabbit could not be "torqued down" enough by hand properly to seal it. Plaintiff introduced into evidence a filter made by Volkswagen for a diesel Rabbit. Instructions on the filter directed that it must be tightened with a torque wrench to eighteen foot pounds. Michael Polsky, general manager of a local car dealer and service business, testified that if the filter had not been sufficiently tightened the filter gasket could blow, allowing oil to escape.

Mr. Crank was without a car for a couple of days before he was able to rent a vehicle. For want of transportation, he missed officiating at several school games and thereby lost income of $300.00. He finally rented a Mercury Cougar at $21.00 per day. The evidence showed that the rental rate was reasonable and that the rental car was the only one he could find at the time. Plaintiff found the Cougar more expensive to operate than his Rabbit.

The repairs to plaintiff's automobile were finished in several days, but he did not pick up his car for two months because he could not pay the $2,389.63 repair bill. He continued to rent the Cougar during that time incurring a $1,869 rental bill. Ultimately, he borrowed the money from his father at $50.00 interest and paid the bill.

Defendant declined to pay plaintiff's repair bill. He filed suit in two counts but elected to submit the case on a breach of warranty theory, dropping his second count at trial. The case was submitted on plaintiff's verdict director, a modification of M.A.I. 26.06.[1] The damage instruction used was M.A.I. 4.01. The jury found in plaintiff's favor, awarded him seven thousand dollars and judgment was entered.

Defendant raises several points on appeal. First, it complains that the evidence was not sufficient to submit the case to the jury and that the court erred in instructing the jury. Defendant also argues that the court erred in allowing plaintiff to testify as to the value of his car after the occurrence, and that the verdict was excessive. Defendant also asserts that the court committed error in dismissing plaintiff's Count II.

### I. Insufficiency of the Evidence

Defendant's first point is that the court erred in not granting it a directed verdict. As we have already noted, we view the evidence in a light most favorable to the plaintiff, according him all reasonable inferences, and disregarding defendant's evidence except as it may support the verdict. *Grossman Iron & Steel Co. v. Bituminous Casualty Corp.*, 558 S.W.2d *supra*, at 258. An issue may not be taken from the jury unless no room remains for reasonable minds to differ on its resolution, but a verdict may not rest on speculation or conjecture. *Gregory v. Robinson*, 338 S.W.2d 88, 91 (Mo.1960) (en banc). Where

1. M.A.I. refers to Missouri Approved Instructions adopted and promulgated by the Supreme

Court of Missouri.

reasonable minds can differ on a jury question, the jury decides the issue, and a directed verdict may not be granted. *Kuehle v. Patrick,* 646 S.W.2d 845, 847 (Mo.App. 1982).

Essentially, plaintiff's theory at trial was that defendant expressly warranted that it would be able to install the required filter in a workmanlike manner. Defendant committed a breach of that warranty, plaintiff contends, by tightening the filter manually without using a torque wrench, thereby allowing oil to leak from the engine causing plaintiff's damage.

■ Where a company represents itself as being able to do work of a particular character, a warranty is implied· that the work will be performed properly or in a workmanlike manner. *Freeman Contracting Co. v. Lefferdink,* 419 S.W.2d 266, 275 (Mo.App.1967); *McCallum v. Executive Aircraft Co.,* 291 S.W.2d 650, 657 (Mo.App. 1956). In a sale of goods governed by the Uniform Commercial Code, an advertisement read by the plaintiff may create an express warranty. *Interco, Inc. v. Randustrial Corp.,* 533 S.W.2d 257, 262 (Mo. App.1976). This case was not pleaded or submitted under the UCC, but defendant's advertisement, which plaintiff read, stated that defendant was skilled in the installation of oil filters in diesel Rabbits. That was sufficient to create at least an implied warranty that the installation would be done in a workmanlike manner. *Freeman Contracting Co. v. Lefferdink, supra; McCallum v. Executive Aircraft, supra.*

■ Plaintiff's evidence was sufficient to show that hand-tightening the filter would not torque it down enough to prevent the gasket from blowing and allowing the oil to leak out of the engine. Defendant's witness found the gasket on the filter to be ·ruptured and pushed out, and the engine was ruined because of the loss of oil. The oil loss occurred only several hours after the defendant's mechanic changed the oil and installed the filter. That evidence was sufficient to permit reasonable minds to

differ on the question whether defendant had committed a breach of the implied warranty. Accordingly, a directed verdict was not appropriate.

## II. *Instructional Error*

■ Defendants' next point is that the court erred in instructing the jury. The instruction is a modification of M.A.I. 26.-02:

### Instruction No. *6*

Your verdict must be for Plaintiff and you must assess a percentage of fault to Defendant if you believe:

First, Defendant did not properly install an oil filter on Plaintiff's 1980 Volkswagen diesel Rabbit and;

Second, because of such failure Defendant's contract obligations were not performed and

Third, Plaintiff was thereby damaged.

First, Firestone argues that the instruction mixes contract and negligence theories. We agree. In this action on a warranty, plaintiff's fault or comparative fault could not have been and was not in issue, but since the error was in defendant's favor, it will not be heard to complain. *See. Washington v. Eickholt,* 360 S.W.2d 731 (Mo.App.1962). Moreover, in view of the fact that the jury did not assign any percentage of fault to plaintiff, we conclude that it was not confused or misled by the error.

■ Defendant next argues that the instruction was erroneous because the parties disputed the terms of the agreement, therefore, M.A.I. 26.06 was the applicable instruction. M.A.I. 26.06, Notes on Use. Defendant does not understand the nature of plaintiff's action. Plaintiff sued on defendant's breach of warranty, an action ex contractu, *Hess v. Appleton Manufacturing Co.,* 164 Mo.App. 153, 148 S.W. 179, 180 (1912), but not the type of contract action to which M.A.I. 26.02 and 26.06 usually apply.[2] No approved instruction

---

**2.** The only term of the warranty was that de-

fendant was to perform the work properly or in

covers an action for breach of warranty for workmanlike performance. *See,* M.A.I. 25.-01 through 25.08, therefore a non-M.A.I. or modified M.A.I. instruction was required. Rule 70.02(e). Except as we have already observed, the modification followed the substantive law and otherwise conformed to the dictates of Rule 70.02(e). The only other possible problem in the instruction is that in the third paragraph the words "contract obligations" were used. More precisely, "warranty" obligations were at issue, but plaintiff's action was ex contractu, which involved an obligation of the defendant. The instruction was substantially correct and does not require reversal.

### III.  *Measure of Damages*

Defendant also contends that the court erred in using M.A.I. 4.01 to instruct the jury on the measure of damages.[3] Defendant argues that M.A.I. 4.02 was the proper instruction because M.A.I. 4.01 is to be used where both property and personal damage are in issue, whereas M.A.I. 4.02 is to be used where only property damage is claimed. M.A.I. 4.02, Notes on Use; *See, Sands v. R.G. McKelvey Building Co.,* 571 S.W.2d 726, 731 (Mo.App.1978).

■■■ Defendant is correct in its general statement of the law, nevertheless, M.A.I. 4.02 is not the proper damage instruction here because plaintiff seeks to recover consequential damages caused by defendant's breach of warranty. *See, Liberty Financial Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 57–59 (Mo.App.1984) (where the court held that plaintiff was entitled to consequential damages for defendant's breach of contract in failing to properly transfer computer data).[4] Even though this action is for a breach of warranty in the performance of a service—installation of the filter—we see

no principled reason why we should not allow recovery for consequential damage in such a case.

■■■ M.A.I. 4.02 does not correctly state the rule for the recovery of consequential damages. In an action for breach of contract, in addition to recovering the benefit of his bargain, a plaintiff may also recover for damages naturally and proximately caused by the commission of the breach and for those that could have been reasonably contemplated by the defendant at the time of agreement. *Id.; Brion v. Vigilant Insurance Co.,* 651 S.W.2d 183, 184–85 (Mo.App.1983). The warranty action here is ex contractu, and the same consequential damage rule applies. M.A.I. 4.02 only provides for the recovery of the difference in fair market value in the damaged property before and after the occurrence. Mr. Crank does not seek compensation for damage to the property actually supplied by defendant, the filter, but for recovery of the damages that are the consequence of the improper installation of the product. The measure provided for in M.A.I. 4.02 follows the measure used in an action ex delicto for injury to personality. *Wilson v. Motors Insurance Corp.,* 349 S.W.2d 250, 255 (Mo.App.1961). To use M.A.I. 4.02 would limit plaintiff's recovery to only the damage to his car and would not allow for recovery of other possible compensable damage such as loss of use or the inconvenience that may have been the natural and proximate result of the breach or were within the reasonable contemplation of the defendant at the time of agreement. *Liberty Financial Management Corp. v. Beneficial Data Processing Corp., supra,* 670 S.W.2d at 57–59; *Brion v. Vigilant Insurance Co., supra,* 651 S.W.2d at 184–85.

■■■ Similarly, M.A.I. 4.01 is not the proper measure because it also does not

a workmanlike manner, which was hypothesized by the instruction.

**3.** If you find in favor of Plaintiff on Plaintiff's claim for damages, then you must determine the total amount of Plaintiff's damages to be such sum as you believe will fairly and justly compensate Plaintiff for any damages you be-

lieve he sustained as a direct result of the occurrence mentioned in the evidence.

**4.** § 400.2–715(2) Revised Statutes of Missouri, 1978, authorizes the recovery of consequential damages in cases covered by Article 2 of the Uniform Commercial Code.

follow the law on the measure of consequential damages. *See,* Rule 70.02(e). The use of M.A.I. 4.01 has been approved in breach of contract cases, *Gottlieb v. Hyken,* 448 S.W.2d 617, 621 (Mo.1970), but its use in assessing special damages in a contract case has been criticized. *Shurtz v. Jost,* 597 S.W.2d 652, 655 (Mo.App.1979). By allowing for recovery of damages directly resulting from the occurrence, M.A.I. 4.01 substantially follows the rule for damages naturally and proximately arising from the breach, but it does not provide for damages that were reasonably contemplated by the defendant at the time it warranted its work. The prejudice in this is obvious because even though plaintiff, at best, showed $4,759.45 in actual damages, he was awarded $7,000. Defendant's argument on this point is general enough to encompass this contention. The case must be remanded for retrial on the issue of damages, and M.A.I. 4.01 should be modified to follow the law as explained in this opinion.

### IV. *Elements of Damage*

Even though we remand the case for retrial on damages, we address issues concerning two elements of damage for which plaintiff recovered that may cause problems upon retrial.

Taking plaintiff's figure, he only incurred $4,759.45 in actual damages. He justifies the rest of the award as compensation for inconvenience. Damages arising from mere inconvenience are not recoverable. *Allen v. Edwards,* 217 So.2d 284, 286 (Miss.1969). But, when the inconvenience is coupled with a compensable element of damage, the inconvenience occasioned by the breach may be compensated where it is supported by the evidence and shown with reasonable certainty. *See, Id.; McGrady v. Chrysler Motors Corp.,* 46 Ill.App.3d 136, 4 Ill.Dec. 705, 360 N.E.2d 818, 821 (1977). Therefore, Mr. Crank would be able to recover for his inconvenience since he had other items of compensable damage such as the destruction of his engine.

Mr. Crank also sought recovery for the loss of use of his Rabbit, which is compensable damage. *Stallman v. Hill,* 510 S.W.2d 796, 798 (Mo.App.1974); *Winter v. Elder,* 492 S.W.2d 146, 148 (Mo.App. 1973). Plaintiff can only recover for the time that was reasonably necessary to repair the property or the time necessary in the exercise of due diligence to secure repair. *Id.* At trial, Mr. Crank put on evidence that the cost of his rental car was reasonable, but he did not present evidence that a two month period was a reasonable time to secure those repairs. Although the car was repaired in several days, he could not pay for it and had to borrow money, but he presented no evidence explaining why it took him so long to borrow the money. Without more evidence than that presented at the first trial, Mr. Crank could only recover for the actual time it took to fix the car, and he must show that it was a reasonable time to make the repairs.

Defendant also complains that the court erred in allowing Mr. Crank to testify that his car was worthless after the engine was ruined. *Casada v. Hamby Excavating Co.,* 575 S.W.2d 851, 853 (Mo.App.1978), explains the applicable law on this point and should be followed upon retrial.

### V. *Dismissal of Count II*

Defendant's final argument is that the court erred in dismissing plaintiff's Count II. The record reveals that plaintiff elected to submit his case to the jury on Count I, dropping Count II. Plaintiff would be barred from filing a second action based on Count II, and defendant has no complaint.

For the foregoing reasons, judgment on liability is affirmed, but the case is remanded with directions for retrial on damages.

All concur.